### W. N. Blackwell et al. v. Coleman County.

No. 950. Decided December 6, 1900.

**1. Survey—Evidence—Intention of Surveyor.**

It is not admissible, for the purpose of determining which of two conflicting calls in a survey should prevail, for the surveyor who made it to testify what he intended to include. (Pp. 220, 221.)

**2. Same—Boundaries—Calls.**

The intention which courts seek to ascertain in determining which of two conflicting calls in a survey (lines of older surveys or course and distance) shall have controlling effect, is not that which exists only in the mind of the surveyor, but that which may be gathered from the language of the grant—its legal meaning when considered in the light shed upon it by the acts constituting the survey. (P. 220.)

Question certified by the Court of Civil Appeals for the Third District, in an appeal from Coleman County.

*Jenkins & McCartney* and *T. J. White*, for Blackwell et al.—Oral testimony is not permissible to vary or contradict a written instrument. As we understand the law, the primary rule for construing a written instrument is, you must look to the language of the instrument itself. Subsidiary but not contradictory of this rule, you may look to the four corners of the instrument,—to the whole of it; you may look to the sub-

ject matter; you may by oral testimony put yourself in the situation of the parties at the time of the contract; you may find out what they knew,—then in the light of these facts you determine as a matter of law what is meant by the language used, what intention in the light of this is expressed by the language used, and not what intention did they mean to but did not express. The question here is, what did the grantor mean, or what, on the principle of estoppel, did she lead the grantee, at the time it accepted the grant, to suppose was meant by the calls in said grant? And is this to be determined by the well established legal rules for the construction of the written instrument, or is it to be determined by the secret and unexpressed intention of the surveyor, unknown at the time of the grant and for an indefinite number of years thereafter, to either the grantor or the grantee?

To illustrate: A surveyor actually runs a line and makes a corner, supposed to be in a line of an older survey, but said line is in fact not reached. It was held in Oliver v. Mahoney, 61 Texas, 612, that the corner actually made will control the call for the line of an older survey. Would the surveyor in such a case be permitted to testify: "I made said corner supposing it to be on the line called for, but it was my intention to corner on said line and disregard the corner should it afterwards be found that I was mistaken in supposing, when I made the corner, that I had reached the old line?" A surveyor ran out a survey and made bearings for corners; finding that he had made a miscalculation, he extended the line, but in his field notes he called for the corners as established by the bearing trees. Held, these were the true corners. Bartlett v. Hubert, 21 Texas, 20.

It is not a question of what he intended by the call, but what he actually did. Busk v. Manghum, 37 S. W. Rep., 460; Id., 38 S. W. Rep., 835. If immaterial, it is not admissible according to the primary and uniform rules of evidence. The language used in the patent must be considered with reference to the understanding of the parties at the time it is used, as to the locality of the several surveys mentioned in it (Boon v. Hunter, 62 Texas, 589; this was an office survey), but not with reference of the unexpressed intention of the parties, should it afterwards be ascertained that they were mistaken as to the locality of the surveys.

It is the intent apparent upon the face of the instrument that controls, and not the secret unexpressed intention of the surveyor. In order to determine what intention is expressed by the language used we may, as in construction of all our written instruments, call to our aid the light of the surrounding circumstances, but not the parties to the instrument to testify as to what they intended by the language used. We respectfully submit that to hold that a surveyor may testify as to his intention as to which of the calls should control is to overturn the established rules for the construction of written instruments.

*Sims & Snodgrass, J. R. Baker,* and *J. A. B. Miller,* for Coleman County.—In case of uncertainty or ambiguity in the field notes of a grant parol evidence is admissible to explain same. 1 Greenl. on Ev., sec. 288; 4 Am. and Eng. Enc. of Law., 2 ed., 848; Johnson v. Archibald, 78 Texas, 96.

In McCreary v. Douglass, 5 Texas Civil Appeals, 494, Head, J., says: "Howeth was permitted to testify that he, as agent for the owner, had the Brown located; that no survey was made upon the ground, but that the field notes were made out in the office of the surveyor, and the intention was to include all the land between the Brinkley and Jack County school surveys. We do not think there was any error in admitting this evidence. The witness was present when the field notes were made, and his evidence in no manner tends to contradict, but rather to explain, the field notes as returned."

In speaking of such a case as the one under investigation, where the surveyor called for the lines of an older survey and also for certain course and distance, and the two conflicted, this court, in Baker v. Light, 80 Texas, 633, says: "In case of two inconsistent calls of such a character one of them is usually the result of mistake; and when it can be ascertained which is the mistaken call, it will be rejected and the other adopted as that expressive of the true intention of the parties."

In Boone v. Hunter, 62 Texas, 588, this court in passing upon what the law was in a case like the one at bar, that is, when no actual survey was made, uses this language: "But such matters of description as were evidently given by mistake should be disregarded and effect given to the calls which are certain and are found, which in connection with other matters of description contained in the grant will make it conform to the evident intention of the parties. When the line or corner of another survey is called for in field notes made without an actual survey, such lines or corners, if evidently called for by mistake, may be disregarded."

This class of testimony, so far as our investigations have gone, has been universally admitted, and it has been frequently referred to as one of the material facts in the case as proven, by the appellate courts, in stating the material facts proven. See McAnninch v. Freeman, 4 S. W. Rep., 369; Brown v. Bedinger, 72 Texas, 247; Loring v. Corcoran, 26 Texas, 92; Robinson v. Doss, 53 Texas, 505.

The fact that this class of evidence has thus been treated as admissible and material in the consideration and decision of cases heretofore is some persuasive proof of its admissibility, to say the least of it.

Whenever the intention and purpose of a party is a material inquiry or a material fact, his statement of his intention and purpose is direct evidence on the point and admissible. It is the statement of a fact and not a conclusion. Hamburg v. Wood, 66 Texas, 168; Robertson v. Gourley, 84 Texas, 578; 1 Whart. on Ev., secs. 482, 508, 955; Sweeney v. Conley, 71 Texas, 544.

Our Supreme Court in the case of Robinson v. Doss, 53 Texas, 506, after reciting the fact that the intention of the surveyor was proved in

the case, says: "Appellees assert that an office survey, a survey not actually made, can not be made to conform to the intention of the surveyor; citing Chinoweth v. Haskell, 3 Peters, 92. That case does not establish the rule that the intention of the surveyor is to be disregarded as to the location of lines not actually run out. It announces and enforces a rule applicable to all cases, that the 'intention of a surveyor can be of no avail since he has not indicated this intention on his survey.' On the other hand the authorities show that, although the survey was not actually made, we are to still seek for the intention of the surveyor. Says Judge Marshall, speaking for the Supreme Court of Kentucky: 'This is not a question of tracing an actual boundary, or of discovering a lost one, or one which may be presumed to have been completed; but of constructing a survey by adding two lines which were never actually run. And the cardinal object is, to ascertain what the surveyor would have done if he had gone on to complete the work.' "

It would seem that the testimony has always been regarded as material by the courts in case of a latent ambiguity, as in this case, and we respectfully ask that the question be answered in the affirmative by this court.

WILLIAMS, ASSOCIATE JUSTICE.—The certificate of the Court of Civil Appeals is as follows:

"The action was brought by Coleman County against W. H. Rutherford and W. N. Blackwell. The action was based on a promissory note executed by W. N. Blackwell to Coleman County and to foreclose vendor's lien on the land in controversy. The defendant in error, Coleman County, recovered judgment for the amount sued for, with a foreclosure of the vendor's lien upon the land.

"The Court of Civil Appeals, as a part of this certificate, finds the following facts: The note in question was executed by W. N. Blackwell in favor of Coleman County as a part of the purchase price for land sold by Coleman County to Blackwell, which is alleged by the county to be a part of a survey situated in Coleman County, located for that county, known as the Coleman County survey. Thereafter, Blackwell sold to plaintiff in error, W. H. Rutherford, who assumed the payment of the note in question to Coleman County. Plaintiff in error Rutherford, as a defense to the action, pleaded that there was a failure or want of consideration in part for the note sued upon, by reason of the fact that at the time of the sale by Coleman County to Blackwell and at the chased from Blackwell, was public vacant land, and that Coleman County survey which was conveyed to Blackwell and which was purchased from Blackwell, was public vacant land, and that Coleman County had no title thereto, and that thereafter the plaintiff in error acquired title to the land in controversy by location and patent from the State. We find that the field notes of the Coleman County survey, in attempting to give the boundaries of the same call for the lines of older surveys, which lines, in some instances, can only be established by

running course and distance from a few corners which are found upon the ground; and if the calls for the lines of these older surveys shall control, it will embrace and include the land in controversy, and if such is the case, the land would not be vacant and unappropriated public domain at the time it was sold by the county. We also find that there are calls in the field notes of the Coleman County survey for course and distance, and which, if it should prevail, would leave a part of the land in controversy at the time of the sale by the county and the execution of the note, vacant and unappropriated public domain. The calls for course and distance do not extend to the lines of the older surveys, and, therefore, the Coleman County survey would not include all of the land in controversy. Which of the two calls should prevail as above stated was, under the charge of the trial court, left to the determination of a jury. In aiding the jury to determine whether the call for the lines of the older surveys or for course and distance should control, the trial court, over the objections of the plaintiff in error, permitted the surveyor who originally located the Coleman County survey to testify that it was his intention to embrace and include in the Coleman County survey and as a part of the same, all of the land lying between and up to the lines of the older surveys. The verdict of the jury is in accord with this testimony. The ruling of the court in admitting this evidence of the surveyor was duly excepted to and a bill of exceptions preserved, which is brought up in the record in this case, and upon which assignments of error are, in legal form, predicated.

"We certify to the Supreme Court the question whether or not the testimony of the surveyor, as above set out was admissible. The question is whether or not the surveyor who located the land can aid a call in the survey which is in conflict with another call by testifying as to what his intention was at the time he made the survey."

The question seems to have been whether or not the calls for course and distance or those for lines of older surveys should prevail. Upon this question, we are of the opinion that the testimony of the surveyor stating his intention in making the survey was not admissible. In determining the location of the land in such cases, the courts seek to ascertain the true intention of the parties concerned in the survey; but the intention referred to is not that which exists only in the mind of the surveyor. It is defined as that which may "be gathered from the language of the grant," or as "the intention apparent on the face of the grant" (Hubert v. Bartlett, 9 Texas, 104), or "the legal meaning of the language of the patent when considered in the light shed upon it by the acts constituting the survey." Robertson v. Mosson, 26 Texas, 251; Robinson v. Doss, 53 Texas, 507; Brown v. Bedinger, 72 Texas, 247; Richardson v. Powell, 83 Texas, 591. When reference is made in the decisions to the intention of the surveyor, the purpose deduced from what he did in making the survey and description of the land is meant, and not one which has not found expression in his acts. Grants are issued by the State and accepted by the grantees upon the acts done by the

surveyor in identifying and describing the lands, and the rights of both are to be determined by the legal effect of those acts and not by intentions which can not be deduced from a construction of the descriptions in the grants, with the aid of the facts constituting the surveys upon which they are based. Hence, if the intention of the surveyor appears from his field notes and his acts done in making the survey, his evidence to prove his intention is superfluous, while if it does not so appear, it can not control or affect the grant. In any view, therefore, it would be irrelevant, whether hurtful or not. We answer the question in the negative.