SULLIVAN v. STATE.

(Court of Civil Appeals of Texas. Austin. Jan. 28, 1914. On Motion for Rehearing, March 11, 1914.)

1. PUBLIC LANDS (§ 175*)—SURVEYING—RE-SURVEYING.

Upon resurvey of a grant of public lands, it is not permissible to include other and different lands from those included in the original file and survey.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 555–570; Dec. Dig. § 175.*]

2. PUBLIC LANDS (§ 175*)—SURVEYS—ERRORS.

Where a surveyor, making an office survey of a patent of land, erroneously supposed the corner of a county, which was the starting point of the survey, to be about a mile and a half further north than it was in fact, such supposition could not control the boundary between the survey and other surveys of land, for the boundary must be determined by the calls, and not by the surveyor's unexpressed supposition.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 555–570; Dec. Dig. § 175.*]

3. PUBLIC LANDS (§ 177*)—ACTION TO CANCEL PATENT — JURISDICTION OF DISTRICT COURT.

Any district court has jurisdiction of the subject-matter of a suit to cancel patents to public lands.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 576–578; Dec. Dig. § 177.*]

4. VENUE (§ 17*)—ACTION TO CANCEL PATENT —DISTRICT COURT—OBJECTIONS—WAIVER.

Unless objection is made in apt time, any district court has jurisdiction of a suit by the state to cancel patents to public lands, regardless of the defendant's domicile or the location of the land.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 28–31; Dec. Dig. § 17.*]

---

5. PUBLIC LANDS (§ 177*)—PATENTS—SUITS TO CANCEL.

The state may maintain a suit to cancel patents to public lands on the ground that they were issued by mistake or obtained by fraud.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 576–578; Dec. Dig. § 177.*]

6. PUBLIC LANDS (§ 177*)—ACTION TO CANCEL PATENT—NECESSARY PARTIES—JOINDER.

In a suit by the state to cancel defendant's patents, on the ground that they conflicted with an earlier patent, the owners of the earlier patent were not necessary parties, though they might be interested in the judgment, for no judgment could be recovered against them, and the cancellation of defendant's patents would not affect the rights he might have acquired by adverse possession.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 576–578; Dec. Dig. § 177.*]

7. APPEAL AND ERROR (§ 230*)—OBJECTIONS AT TRIAL—NONJOINDER — WAIVER OF OBJECTIONS.

Where defendant went to trial without objecting to nonjoinder of other parties, his plea in abatement not being filed until four days after the trial had begun, his right to object on appeal to the nonjoinder was waived.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 230.*]

Appeal from District Court, Travis County; Charles A. Wilcox, Judge.

Action by the State of Texas against D. Sullivan. From a judgment for plaintiff, defendant appeals. Affirmed.

Geo. S. Walton, of Houston, for appellant. John L. Terrell, of Dallas, B. F. Looney, Atty. Gen., and G. B. Smedley, Asst. Atty. Gen., for the State.

### Findings of Fact.

JENKINS, J. This case was tried by the court without a jury, and the court made and filed the following findings of fact, which we adopt:

"First. That on the 18th day of April, 1882, the Commissioner of the General Land Office issued to the Austin & Northwestern Railway Company certain legal and valid land certificates, each certificate entitling said railroad to 640 acres of land, to be located upon any of the vacant and unappropriated public domain of the state.

"Second. On the 15th day of November, 1883, said railway company made an application to the county surveyor of Hidalgo county to locate said land certificates upon certain lands situated in the southern part of Hidalgo county, known as 'porciones.' Said applications were filed in the office of the surveyor on the 19th of November, 1883, and recorded on the same day. Across the face of the record of said applications in the surveyor's office appears the following notation: 'File lifted same day as recorded for good cause shown the surveyor William P. Dougherty. County Surveyor H. C. T.' It does not appear that any survey was actually made by virtue of said applications, and no record of same appears in the land office.

"Third. Leaving out of consideration the indorsement made across the face of the surveyor's record, it does not sufficiently appear from the evidence in this case whether or not the porciones upon which said certificates were first filed were, at the time of such filing, appropriated lands.

"Fourth. On the 5th day of March, 1884, the county surveyor of Hidalgo county made surveys for the Austin & Northwestern Railway Company by virtue of the certificates heretofore mentioned, said surveys calling to begin at the northeast corner of Hidalgo county, and the northwest corner of Cameron county for starting and connecting point of survey, and said system of surveys so made for said railroad company all being located by course and distance from such beginning point, so as to make a connected system of surveys. The field notes of the surveys so made were recorded in the county surveyor's office on the 12th day of March, 1884, and filed in the land office on the 9th day of April, 1884, and indorsed as 'correct on the map of Hidalgo county June 2, 1884.' These surveys so made in March, 1884, were not made upon the ground by the surveyor, but were what are commonly known as office surveys. The field notes so returned, if constructed according to their calls, would cover and include a considerable vacancy of land lying in the northeastern portion of Hidalgo county between Los Olmos creek and the southern boundary of Nueces county but would conflict in part on the east with survey 286 C. C. S. D. & R. G. R. R. Co., and in part on the west with survey 350, on the north with survey No. 539, Mrs. H. M. King, and on the south with the Santa Rosa de Arriba grant.

"Fifth. On the 24th day of June, 1884, the county surveyor of Hidalgo county, upon the request of the owner of said certificates, went upon the ground for the first time and surveyed a portion of the east line of Hidalgo county, and located a point north of the eighty-second-mile post, which point he supposed to be the northeast corner of Hidalgo county, but which point was in fact about two miles north of the true corner, and over some of the lines on the ground, and returned field notes calling for said eighty-second mile post as a connecting corner, said field notes purporting to have been made by virtue of the certificates issued to the Austin & Northwestern railway company. Said field notes were recorded in the office of the county surveyor on the 28th day of June, 1884, and filed in the land office on July 16, 1884. Said second system of surveys, if located according to their calls with reference to the eighty-second mile post, would be located about two miles north of their position if located course and distance from the northeast corner of Hidalgo county, as called for by the surveys made in March, 1884, and, if located from said eighty-second mile post, would only embrace about 208 acres of unappropriated land,

and, if so located said surveys would lie almost wholly in Nueces county.

"Sixth. That on the 23d day of July, 1903, the land commissioner caused a classification and appraisement to be made of Austin & Northwestern Railway sections Nos. 2, 12, 14 and 20, and on April 13, 1903, said four sections were leased to Miss E. C. McCollum for one year.

"Seventh. In February, 1904, J. J. Cocke, deputy surveyor of Hidalgo county, Tex., acting under instructions from the land commissioner, for the purpose of locating and marking said surveys upon the ground, made an actual survey upon the ground of sections 2, 12, 14, and 20. Said field notes were filed in the land office March 28, 1904, and were designated as 'corrected field notes.' Said surveys, as made on the ground by Cocke, are located 184 varas south and 102.2 varas east of where their location would be if correctly surveyed by course and distance from the northeast corner of Hidalgo county.

"Eighth. That on the 10th day of May, 1904, Miss E. C. McCollum made application to purchase said sections Nos. 2, 12, and 14, said application being filed in the land office on the 16th day of May, 1904; and on the 9th day of June, 1904, she made application to purchase said section No. 20, which application was filed in the land office on the 18th day of June, 1904, said lands being awarded to her. On the 12th day of July, 1904, Miss E. C. McCollum transferred all of said sections to G. T. and Mrs. A. C. Tindall, which was filed in the land office, and said Tindalls' substitute applications and obligations were duly filed, and the land office issued to said Tindalls certificate of occupancy on the 10th day of June, 1907; Tindalls' purchase is now in good standing in the land office.

"Ninth. That on the 15th day of June, 1885, D. R. Fant filed with the county surveyor of Hidalgo county, Tex., applications for survey of certain lands, by virtue of veteran donation land certificates issued to M. Farley and Samuel S. Hervey. Said county surveyor, by virtue of said applications, on the 15th day of November, 1885, made a survey of the lands described in the application, and returned field notes which were filed in the land office on the 17th day of June, 1886, which survey was found to be incorrect, and on the 15th day of December, 1896, corrected field notes were made for said two surveys, said field notes being filed in the land office on the 9th day of February, 1897, but were not approved by the land office, and are marked as 'canceled by corrected field notes.' On the 14th day of August, 1897, another set of field notes was filed in the land office covering said two surveys. On the 25th day of February, 1905, F. M. Maddox again made surveys of said land, and on the 5th day of September, 1905, said surveys, as described by the field notes returned by Maddox, were patented to D. R. Fant, as assignee of said M. Farley and Samuel S. Hervey.

"Tenth. That in 1905 surveys were made upon the application of Ramon Word, and upon the 24th day of November, 1905, patents issued to said Ramon Word for Word surveys Nos. 1, 2, and 3.

"Eleventh. The Ramon Word surveys Nos. 1 and 2, would be entirely embraced within the Austin & Northwestern surveys if said surveys were located either from the Cocke survey, or from the northeast corner of Hidalgo county.

"Twelfth. A portion of the land patented to D. R. Fant, assignee of M. Farley, is covered by portions of surveys Nos. 12, 19, 13, and 20, Austin & Northwestern Railway Company. And a portion of the R. Word survey No. 3 is covered by surveys Nos. 1 and 2, Austin & Northwestern Railway.

"Thirteenth. The land patented to D. R. Fant, assignee of S. S. Hervey, partially conflicts with surveys Nos. 12, 13, 11, 14, and 2, Austin & Northwestern Railway Company, as originally located.

"Fourteenth. Prior to the original survey of the Austin & Northwestern surveys in March, 1884, the east line of Hidalgo county and the south line of Nueces county had been surveyed and marked at intervals, but the actual point of intersection, which would be the northeast corner of Hidalgo county, had not been marked by any visible object on the ground, and has not been so marked since that time.

"Fifteenth. The true position of the following surveys with reference to the true northeast corner of Hidalgo county, and the relation to each other, and the conflicts of said surveys with one another, are correctly shown by the blueprint map made by F. M. Maddox and introduced in evidence, reference to which is here made for location of the following surveys: Austin & Northwestern Railway surveys as located from the northeast corner of Hidalgo county, and surveys Nos. 2, 12, 14, and 20 as made by Cocke, Ramon Word surveys Nos. 1, 2, and 3, the S. S. Hervey and the M. Farley surveys.

"Sixteenth. The defendant, D. Sullivan, is now the owner of the Farley, Hervey, and Word surveys, and the heirs of William N. Coler, Jr., own Austin & Northwestern surveys Nos. 1, 11, 13, and 19.

"Seventeenth. At a time more than three years before the trial of this case the defendant, D. Sullivan, erected a fence near the west boundary line of Austin & Northwestern survey No. 2, and across Austin & Northwestern survey No. 20, so as to embrace within said Sullivan pasture all of survey No. 2 and about 20 acres of survey No. 20, and has during said time used the land so inclosed, and has excluded his codefendants Tindall from the use of the same, the rental value of said lands being 22 cents per acre per annum.

"Eighteenth. At the time Austin & Northwestern surveys Nos. 2, 12, 14, and 20 were sold to Miss McCollum by the state, and at

the time Tindall's substitute obligations were filed, said surveys had been located by Cocke upon the ground, and said sections were purchased and awards made to the purchasers with reference to the said Cocke field notes and surveys.

"Nineteenth. Since the original surveys made for the Austin & Northwestern Railway Company in March, 1884, the official maps of Hidalgo county in use by the land office have shown the said surveys to be located as beginning at the northeast corner of Hidalgo county, and as located by course and distance from such point.

"Twentieth. I find that on December 10, 1912, one of the attorneys representing the defendant D. Sullivan, being engaged in the trial of another case, desiring to secure a postponement of this case, wired the attorneys for the plaintiff that if they would grant a postponement of the case, they would try it regardless of additional parties, which offer was accepted by the attorneys representing the plaintiff, and the case was postponed."

In addition to the foregoing we find:

Twenty-First. That the railway company to which said certificates were issued sold and transferred the same to ——— Pomeroy April 26, 1882, and was not the owner of said certificates when the file was made on the porciones November 15, 1883, and it does not appear that Hall, who made said file, had any authority from the owner of the certificates to make the same.

### Opinion.

Appellee objects to the consideration of each and all of the assignments of error on the part of appellant, for the reason that they are in violation of the rules with reference to the filing of briefs in this court. There is scarcely an assignment in appellant's brief which does not, in some respect, fail to conform to said rules; and, had a motion to strike out the brief been made in reasonable time, we would have sustained the same, but would have given appellant an opportunity to file another brief. But to sustain at this time appellee's objections would, in effect, strike out the brief and affirm the judgment on appellee's brief. The violations are not, in our opinion, sufficiently flagrant to justify so harsh a course, and as appellee supplies some of the defects in the brief of appellants, and assists us in understanding the issues herein, we still consider appellant's brief and render a decision herein on the merits.

The rules prescribed by the Supreme Court, when complied with, facilitate the work of the Courts of Appeals by succinctly presenting the points of law in issue, and the material facts in reference thereto. Compliance with rules does not confer a personal favor on the individuals who compose these courts, for it is immaterial to them, as individuals, whether they work six months on one case or decide six cases in a day, but as courts they owe a duty to the people to dispatch business as rapidly as possible, and in this it is the duty of lawyers to aid these courts. They can discharge this duty by a strict compliance with the rules in the preparation of their briefs.

[1] The controlling issue in this case is as to the true location of the original surveys and their alternate sections. On March 5, 1884, the surveyor of Hidalgo county made out and recorded field notes for these surveys, in which section No. 1 called to begin at the northeast corner of Hidalgo county, and each of the other sections were tied onto this section by calls connecting back to the same. No other natural or artificial objects are called for. This survey was an office survey. In June of the same year the said surveyor made on the ground what purported to be corrected field notes of these surveys, in which he calls to begin section No. 1, 1,300 varas north of the northeast corner of Hidalgo county, and fixed the corner of said county as being 260 varas north of the eighty-second mile post between Cameron and Hidalgo counties. This mile post is in fact about a mile and a quarter north of the northeast corner of Hidalgo county, and the place where the surveyor began in his June survey is about two miles inside Nueces county, and the surveys as then made were almost entirely upon patented lands in said Nueces county. The northeast corner of Hidalgo county has never been marked upon the ground, but the evidence shows that there is no doubt as to its true location. The original field notes had been returned to the land office and marked correct on the map prior to the attempted resurvey by the surveyor of Hidalgo county. It is not permissible in a resurvey of land to include other and different lands from those included in the original file and survey. Adams v. Railway Co., 70 Tex. 252, 7 S. W. 729; Railway Co. v. Thompson, 65 Tex. 186.

It is the contention of appellant that the office survey should begin at a point 200 varas north of the eighty-second mile post, for the reason that the surveyor who made this survey believed at that time that the true northeast corner of Hidalgo county was at this point, as is evidenced by the fact that in his resurvey in the June following he so located that corner of Hidalgo county. There is nothing in the evidence to show that the surveyor had any definite idea as to where the northeast corner of Hidalgo county was at the time he made his office survey. When he made his survey in the June following, he found the eighty-second mile post by beginning at a mile post several miles south, and measuring course and distance north. This eighty-second mile post had been set up by a county surveyor of Hidalgo county some years before in running a line between Hidal-

go and Cameron counties, and he marked the point where he ended his survey 200 varas north of the eighty-second mile post, but he did not establish the northeast corner of Hidalgo county for the reason that said corner was on the south line of Nueces county, and he did not know where said south line was. He expected the county surveyor of Nueces county to run this line and meet him at the point of intersection of the east line of Hidalgo with the south line of Nueces, but, the county surveyor of Nueces county failing to do so, the northeast corner of Hidalgo county was not established at that time; and, as above stated, has never been officially marked on the ground at any time.

[2] Even had the surveyor who made the original office survey supposed that the northeast corner of Hidalgo county was, as contended by appellant, about a mile and a half further north than it is in fact, such supposition cannot control the location of the sections in controversy, for the reason that the true location of a survey must be ascertained from its calls, and not by the unexpressed intention of the surveyor making the same. Ratliff v. Burleson, 7 Tex. Civ. App. 621, 25 S. W. 983, 26 S. W. 1004. It would not have been permissible for the surveyor to testify as to his intention which was not expressed in the field notes. Blackwell v. Coleman County, 94 Tex. 216, 59 S. W. 530. In the absence of anything in the field notes to indicate the contrary, it must be conclusively presumed that the call to begin at the northeast corner of Hidalgo county means the true corner of such county. Had the original survey been made upon the ground, it would be permissible to show at what point the surveyor actually began, though such evidence might show that this point was not in fact the northeast corner of Hidalgo county. In such case it would be made to appear that the call for the northeast corner of Hidalgo county was a mistake; but nothing in this case calls for this application of the rules of law with reference to boundary. If the survey be begun at the northeast corner of Hidalgo county, and all the railroad surveys be run out according to the calls in their field notes, they will cover the ground adjudged to them in the judgment of the court herein.

Appellant claims under subsequent surveys made upon the theory that the railroad surveys began some two miles north of the northeast corner of Hidalgo county. A resurvey of the alternate sections was made under the direction of the commissioner of the land office in 1904, and this survey conflicts to a limited extent with one of the surveys under which appellant claims, made in 1885. The judgment of the court recognizes the superior claim of appellant to the strip of land thus in conflict.

[3, 4] There is no merit in appellant's contention that the district court of Travis county had no jurisdiction to try this case. This was a suit to cancel patents, and any district court in Texas had jurisdiction of the subject-matter. Appellant in his argument relies upon the case of the State of Texas v. Dayton Lumber Co., 164 S. W. 48, recently decided by this court, in which it was held that the state was not a proper party, and this decision was affirmed by the Supreme Court. That was a case of trespass to try title, in which the state sought to recover the title and possession of land which it had sold, and therefore did not have title, and was not entitled to possession. There was a plea in abatement, setting up these facts. This case is not one of trespass to try title, and there was no plea of privilege in the court below, and no objection in any form, either in the original pleadings or in the motion for new trial, to the jurisdiction of the court. If objection is not made in proper time and manner, the state can maintain suit in any court having jurisdiction of the subject-matter. State v. Snyder, 66 Tex. 687, 18 S. W. 106.

[5] The state seeks to cancel patents to the two surveys owned by appellant, for the reason that they were issued by mistake, and that one of them was obtained by fraud and collusion with appellant. In the case of State v. Thompson, 64 Tex. 690, it was said that the right of the state to sue for the cancellation of a patent cannot be questioned in the absence of a statute prohibiting such suit. No one but the state, or some one having a prior equity, can maintain a suit to cancel a patent. Martin v. Brown, 62 Tex. 485; Frontroy v. Atkinson, 45 Tex. Civ. App. 324, 100 S. W. 1023; Decourt v. Sproul, 66 Tex. 368, 1 S. W. 337. "A patent may be attacked on the ground that its issuance was procured by fraud, misrepresentation, or imposition, or was the result of mistake, inadvertence, or error of law, or because in issuing the patent the land office acted without authority of law, as where the land conveyed had been previously sold to another person, where a person other than the patentee was equitably entitled to the land." 32 Cyc. 1053, 1054.

[6, 7] Appellant's contention that the Collier heirs, who owned the odd sections, should have been made parties must be overruled for the reasons: (1) That no judgment was sought or obtained against them, and the fact that they may be interested in establishing the boundary between the even and odd sections does not concern appellant. In so far as appellant may have any defense against them on the ground of limitation, he is not concluded by the judgment in this case; and hence the Collier heirs were not necessary parties to this suit. (2) For the reason, as found by the court, that appellant agreed to go to trial without the necessity of making additional parties. The plea in abatement for lack of making the Collier heirs parties was not filed in this case until

after the trial had proceeded for four days; and, except as to the finding of the court as set forth in the twentieth finding of fact, it does not appear that the court's attention was ever called to said plea in abatement, nor that any ruling was made thereon.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

Appellant in his motion for a rehearing calls attention to the fact that the field notes of section No. 2, as corrected by Cocke in 1904, conflicts with the Farley survey owned by appellant 184 varas on the north boundary of said Farley survey, and that the field notes of section No. 2 as set out in the judgment excludes from said section the strip of land so in conflict, the same being 184 varas wide and 1,474 varas long; that the south lines of the Cocke surveys Nos. 2, 11, and 12 is a continuous line, and that the field notes of section 12, as set out in the judgment, does not give the appellant the benefit of this conflict. As we see it, the error was in allowing the appellant the benefit of the conflict with section No. 2, of which, however, the appellees do not complain. The railroad surveys, as originally made, embraced all of the lands included within their field notes, beginning at the northeast corner of Hidalgo county, and, except in so far as they conflicted with older surveys, appropriated said land. As thus surveyed, sections 2, 3, 11, 14, 12, and 13 included all of the land in the Hervey survey 496, and a part of the Farley survey on the west of and adjoining the Hervey. When these sections were resurveyed by Cocke, they still covered said surveys, the only difference being that the Cocke survey, by moving these sections 184 varas south of their original location, placed that much more of the Hervey and Farley surveys in sections 2, 11, and 12, instead of in sections 3, 14, and 13.

We have carefully examined appellant's motion for a rehearing, and have reached the conclusion that the same should be overruled.

Overruled.