GIDDENS v. WILLIAMS et al.

No. 6709.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 21, 1954.

Rehearing Denied Feb. 18, 1954.

188

land, a part of the Texas & Pacific Railway Certificate %18, located in Red River County, Texas, and known as T & P Ry. Sec. 16. Appellant's claim is to 80 acres of the Southern part of Section 16, its southern boundary calling for the north line of Section 17. Appellees answered alleging that their land was contiguous to appellant's 80 acres in the south part of Section 16, and being the north part of Section 17. T & P Ry. Section 17 lies immediately south of T & P Ry. Section 16. They have a common boundary. The suit, then, in reality involves the boundary line separating Sections 16 and 17. Trial was to the court and resulted in judgment for appellees.

Appellant by points 1, 2 and 4, asserts that since there is a conflict between Section 16 and Section 17 with respect to the location of the land in question, and since Section 16 is the senior survey, Section 17 must yield to it.

The facts show that Section 16 was originally surveyed and located August 6, 1875, and Section 17 was surveyed and located October 26, 1875. The facts also show that Section 16 was resurveyed on November 19, 1878, more than three years after Section 17 was originally surveyed and located. And on July 25, 1905, Section 16 was again resurveyed. In all three of these surveys the north line of Section 17 is called for as the south line of Section 16. In the survey of Section 16, on August 6, 1875, the field notes were denominated "Corrected Field Notes" and called for 114 acres of land. The field notes of the November 19, 1878, survey were changed on the north by lengthening its east and west lines, and called for 179 acres of land. Another survey of Section 16 was made in January, 1905, calling for 87 acres of land and for the south line of the Graves Survey as its north line, but as in all other surveys of this section, called for line A–B, the north line of Section 17 as its south boundary. Section 17 is Railroad Scrip land and Section 16 is Texas Public School land.

The following map of Sections 16 and 17, with surrounding surveys and the land in controversy, is attached hereto:

Pat Beadle, Clarksville, Werlein & Werlein, Houston, for appellant.

Maxwell Welch, New Boston, for appellee.

HALL, Chief Justice.

This is an action in trespass to try title brought by appellant against appellees for title and possession of an 80-acre tract of

A, B, D, C — Represents appellees' land.

A, B, J, I — Represents appellant's land.

E, F, G, H — Represents Railroad Reservation.

X — Represents an established and recognized corner, being the northwest corner of the Hale Survey.

From the above map it will be seen that the line A–B, wherever it may be located, is the boundary line between the two sections of land here in controversy. Point X is a common corner located and agreed to by all parties as being the southwest corner of the G. Martin and the northwest corner of the Hale Survey, and from that point appellees' witness Dalgarn, County Surveyor of Bowie County, using the Martin and Hale common corner, located the southeast corner of Section 16 and the northeast corner of Section 17, 375 vrs. south of said common corner, which was the beginning point in the original survey of Section 16. Based upon this testimony

**190**

the trial court locates appellees' land in Section 17 immediately south of line A–B. The testimony of the witness Dalgarn, together with fence lines and corners located upon the ground and other circumstances, in our opinion, form sufficient basis for the judgment entered below. It seems clear to us that the several surveys subsequently made in an attempt to locate Section 16 on the ground would render Section 16 a junior survey to Section 17. Sullivan v. State, Tex.Civ.App., 164 S.W. 1120; Turner v. Smith, 122 Tex. 338, 61 S.W.2d 792.

But should we be mistaken in the above conclusion, then it is our opinion that there is no conflict between the two sections at line A–B, the common boundary at the south end of 16. Whatever conflict there may be between the two sections is at the north end of Section 16, as is plainly shown by the calls in that vicinity, with respect to the Railroad Reservation tract. Our position in this respect is strengthened by the statement of our eminent Land Commissioner in his letter to the Honorable Pat Beadle, appellant's attorney, appearing in this record, as follows:

"I have prepared a new sketch of the area including and surrounding surveys 16 and 17, a copy of which is herewith enclosed. The construction of this sketch has been based upon the calls in the Asa Dean Survey. By this construction, there appears to be room for both survey 16 and 17 as to the north, south distances. However, by this construction, it will be noted that the T & P Ry. Reservation line is located some distance north of the position shown on our official map. It will also be noted that this construction causes trouble in the survey to the north of the reservation line." Appellant in his brief agrees with the Land Commissioner in his expression set out above. In his brief he says: "It was undoubtedly not known by either plaintiff or defendants during the trial of this case that the survey and calls in the Asa Dean Survey, and the construction thereof, would indicate room for both surveys 16 and 17 as to the north and south distances. The letter of the Land Commissioner and the sketch

in question do show that there is sufficient room for both surveys. However, by such construction it will be noted that the T & P Ry. Reservation line is located some distance north of the position shown on the official map of the General Land Office. But whatever trouble may be caused at the north end of Section 16 by reason of the several locations of its north boundary would not furnish ground for pushing Section 16 over and upon Section 17 in total disregard of the fixed line A–B, about which there has never been any dispute and with which all previous surveys of these sections agree. And especially is this true in the circumstances here where it indisputably appears that the acreage in Section 16 has never been definitely determined. The above conclusion would render inapplicable Southern Pine Lumber Co. v. Whiteman, 163 S.W.2d 212 (w/r, w.m.), by this Court, and Leone Plantation, Inc. v. Roach, Tex.Civ.App., 187 S.W.2d 674, cited and relied on by appellant. These points are respectfully overruled.

Appellant's point 3 is to the effect that the judgment of the trial court is erroneous for the reason that the uncontradicted evidence showed that the State of Texas owned an interest in Section 16 and the State not being a party to the cause it was thereby deprived of its interest in the land without being a party to the suit.

The State of Texas through its Attorney General filed an amicus curiae brief setting up its mineral interest in Section 16 (it being school land) and seeking a reversal of the judgment herein because it was not made a party to the original suit. It must be borne in mind that this action is one in trespass to try title and was brought by appellant against appellees alone, and appellant cannot now complain of a non-joinder of the necessary parties. Hanner v. Summerhill, 7 Tex.Civ.App. 235, 26 S.W. 906. Moreover, this being a suit in trespass to try title, "the only necessary party defendant in such an action is the person in possession of the premises occupied." The State's right in its minerals in Section 16 is in no wise affected by the judgment of

the trial court which adjudged this land to be a part of Section 17. It can still bring its suit and recover its mineral rights, if any it has, in the lands in controversy. Certainly the appellees could not bring the State into the case because no action can be brought against the state without its consent. However, it seems that appellant, plaintiff in the court below, by proper authorization, could have brought the State in as a party plaintiff in the lower court.

We have examined the record fully and all decisions cited by both parties and have concluded that the facts are sufficient to sustain the judgment rendered by the trial court. It is therefore in all things affirmed.