The STATE of Texas, Appellant,

v.

George C. FRASER et al., Appellees.

No. 5042.

Court of Civil Appeals of Texas.

El Paso.

Nov. 17, 1954.

Rehearing Denied Dec. 15, 1954.

John Ben Shepperd, Atty. Gen., J. Arthur Sandlin, Asst. Atty. Gen., for appellant.

Stubbeman, McRae & Sealy, Hamilton McRae, Midland, Turner, Rodgers, Winn, Scurlock & Terry, George S. Terry, Dallas, for appellees.

FRASER, Justice.

This is a trespass to try title suit involving an alleged land vacancy. The case grew out of the application of James C. Wilson, Jr., to lease vacant land in the T. & P. reservation in Glasscock County. The alleged vacant land designated as Tract 10 in the various instruments con-

sists of 52.47 acres and is located between Section 7 in Block 36 and Section 12 in Block 37, Tsp. 4 S. The Commissioner of the General Land Office, after hearing, approved the application for a lease, holding in effect that the same was a vacancy. Adjoining land owners as plaintiffs brought this suit to vacate the award and the Attorney General and Land Commissioner became defendants, and are here on appeal from an adverse judgment in the trial court. The case was tried without a jury and there were no findings of fact and conclusions of law filed. The so-called vacancy is actually a mile-long segment.

■ The evidence indicates that in January 1876 one Powell surveyed T. & P. Reserve and located the center line between Blocks 36 and 37. This was afterwards called the January run, and it called for markers every one-half mile. In April of the same year Powell made a new run and it is apparent that this April run supplied the field notes used in writing the original field notes for the east line of Block 36 and the west line of Block 37. This April run appears to have been marked also. A Mr. W. A. Hutchison purchased Section 12 in Block 37 in 1904, and his heirs still own the said section. In December 1930 Mr. Hutchison employed a surveyor named Robert E. Estes to prepare a set of corrected field notes so that Mr. Hutchison could patent his section. The following are the original field notes of said section:

"Beginning at a stake Earth Mound & 4 pits being N. E. cor of Survey No. 11.

"Thence N. 77 deg. E. 1900 vrs. to Cor. St. Earth Md. & 4 pits.

"Thence S. 13 deg. E. at 810 vrs. cross drain Co. S. W. at 950 vrs. St. Earth Md. & 4 pits—1900 vrs. to Cor. St. Earth Md. & 4 pits.

"Thence S. 77 deg. W. 1900 vrs. to Cor. St. Earth Md. & 4 pits.

"Thence N. 13 deg. W. 1900 vrs. to the place of beginning."

and here are the corrected field notes as filed by Robert E. Estes in 1930:

"Beginning at a stake at the N. E. cor of Section 11, and the S. W. cor of section No. 1, all in Block 37, Township N. 4 south, T. & P. Ry. Co. surveys, for the N. W. cor of this survey.

"Thence N. 75 deg. 29' E. 1896 vrs to a stake at the S. E. cor of said section No. 1 for the N. E. cor of this survey.

"Thence S. 15 deg. 05' E. 1905 vrs. to a stake at the S. W. cor of Section 7, Block 36, Tsp. No. 4 south, for the S. E. cor of this survey.

"Thence S. 75 deg. 29' W. 1896 vrs. to a stake at the S. E. cor of Section 11, this block for the S. W. cor of this survey.

"Thence N. 15 deg. 05' W. 1905 vrs to the place of beginning."

Plaintiff maintains that the corrected field notes as filed by Mr. Estes go to certain stakes and markers which are 100 varas short of the corners mentioned, and that the calls to the corners of the surrounding surveys which are admittedly recognized corners, are mere suppositious calls and that Estes meant and intended his calls to go to the stakes and mistakenly assumed that such were at the corners of the surrounding surveys. This position is testified to by a Mr. Simpson, a licensed land surveyor employed by the General Land Office, and whose report was dated May 5, 1951. Mr. Simpson's testimony is that he himself did not make a survey on the ground of Section 12, but that he had "been along it". There is no proof from the evidence and the testimony that Mr. Estes, who made the survey in 1930 for the field notes ever went on the ground and made a ground survey so that his footsteps could be followed. There is no evidence that Estes ever went physically to any of the markers, stakes, etc., mentioned in his field notes. The only evidence whatever was the printed statement on the form used by Estes in which it is stated that the

survey was made on the ground, and this would be useful if his footsteps could ever have been followed or if the stakes mentioned in his field notes had ever been seen or found by anyone. As it is, it is only the printed form that Estes used. Much of Simpson's testimony alleging the existence of the vacancy is based on actual on the ground surveys made by Estes of *other* surveys in the general area, but there is no evidence that Estes made such a survey on Section 12. We do not feel that a vacancy has been established. Had Estes actually been on the ground and gone to the markers or monuments and then mistakenly assumed he was at the accepted corner of an adjoining survey such calls might have been labelled suppositious. A glance at these field notes will also point out that as such there is no ambiguity or confusion requiring testimony relative to other sections or land markers in the same area. His field notes begin at the established corner of an adjoining section and complete the circuit, touching the corners of the other three adjoining sections and coming back to the place of beginning. Any reasonable interpretation of Estes' field notes indicates, if any indication is necessary regarding his intention, that he intended the field notes to describe the tract of land now known as Section 12 as being all of the land lying between the adjoining sections 11, 1, 7 and 13. Simpson's testimony indicates that he believed that this alleged vacancy lay between the existence of the stakes and the April line run by Powell, because Estes mentioned such stakes and distances in his field notes. It must be kept in mind that Estes' field notes called for stakes and joinder to the patented surrounding T. & P. sections, also that the original field notes covered all the area between the above mentioned four adjoining sections. We feel that the calls here to the corners of adjoining patented sections speak for themselves and resort to the field notes of the other surveys is not necessary. If Estes' field notes are applied to the ground they will go to said corners, and this seems to us controlling, in view of the fact that it is impossible to find or follow his actual footsteps or to locate the

stakes mentioned by him in his field notes. In using older field notes he apparently assumed that the stakes would be at these corners, and we therefore conclude that his real call was to the corners and not to the stakes. So it is clear that a surveyor can go unerringly to the corners of patented adjoining sections as set forth in Estes' field notes, and there is no absolute evidence in this record that the stakes called for in Estes' field notes were actually on the ground. Sullivan v. State, Tex.Civ. App., 164 S.W. 1120, writ refused; Blackwell v. Coleman County, 94 Tex. 216, 59 S.W. 530; Maddox v. Fenner, 79 Tex. 279, 15 S.W. 237.

It is evident that Simpson must have used other surveys by Estes to fortify his assertion that the calls in the survey here in question were suppositious. There being no ambiguity either in the field notes themselves or in their application on the ground they must stand unchanged by testimony regarding the other surveys in the area.

■ We must take notice of the failure of the lower court to file its findings of fact and conclusions of law, which failure entitles the decision of the lower court to be affirmed if there is any support in evidence for a proper theory, and we must further assume that the trial court found all facts necessary to its judgment favorable to plaintiff. Austin v. Cochran, Tex. Com.App., 2 S.W.2d 831; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114.

It therefore follows that the trial court must have impliedly found that Estes' corrected field notes were based on an office survey and that he intended to include in his corrected field notes the same area covered by the original field notes, and to include all the land between the surrounding T. P. sections 11, 1, 7 and 13, and that in calling for a joinder to the corners of the surrounding surveys he meant those corners as originally located and patented by the owners of said surveys. Therefore, in view of the fact that the stakes called for in Estes' corrected field notes have not

been proven to be present, it is very suggestive that this survey by Estes was actually an office survey; there is no ambiguity in the corrected field notes and their intention is clear; that there is no conflict between the corrected field notes and the original field notes; that the field notes can be readily applied on the ground, we hold that no vacancy exists. State v. Sun Oil Company, Tex.Civ.App., 114 S.W.2d 936, writ refused.

The appellant's point of error is overruled and the decision of the trial court affirmed.