Fannie SWEATS et al., Appellants,

v.

SOUTHERN PINE LUMBER COMPANY,
Appellee.

No. 13918.

Court of Civil Appeals of Texas.

Houston.

Oct. 4, 1962.

Rehearing Denied Nov. 1, 1962.

Adams & Granberry, F. P. Granberry, Crockett, for appellants.

Ward R. Burke, Diboll, R. E. Minton, Lufkin, Hutson & Cauthan, Groveton, for appellee.

BELL, Chief Justice.

This suit involves the correct location of the north line of the James Rust Survey in Trinity County. That line will also be the middle south line of the George Wilson Survey because the call in the Wilson field notes is for the north line of the Rust. The Rust is the senior survey. The trial court, sitting without a jury, found the north line of the Rust to be as contended for by appellee, that is, it followed the meanders of the cutoff of Piney Creek. This meant that the appellant Payne had cut timber on a tract of about 15 acres which lay in the Wilson Survey which belonged to appellee. Judgment was rendered awarding title to the tract to appellee and it also awarded damages for the value of the timber cut.

As an aid to understanding the opinion we attach hereto a drawing that we have made.

The number 175 represents the undisputed northeast corner of the Rust Survey on Piney Creek. The letter M represents the point at which Piney Creek forks. The south fork, or cutoff, of Piney Creek meanders as shown on the drawing. Piney Creek, or the north fork, meanders from M through E, Y and D-1. The area M, E, 176 (the area with diagonal lines) represents the acreage awarded appellee after the trial court found the north line of the Rust to be the cutoff of Piney Creek. Appellee had contended such line was either as the court found or the straight line from 176 to A. S, 175 represents the east line of the Rust. R, B represents the east line of the Ware. A, R represents the west line of the Rust which corresponds with the east line of the Ware. C, D represents the east line of the Evans and a part of the west line of the Wilson. D, T represents the east line of the Gregory and part of the west line of the Wilson.

The number 174 represents the lower southeast corner of the Wilson. B, Y represents a projection of the east line of the Ware from its northeast corner.

The drawing is not to scale. We have not shown some other adjoining surveys as shown by the record because we deem such unnecessary. It suffices to say that their location is not in dispute.

The senior survey is the Richard Gregory, which was surveyed June 2, 1857 by J. W. Hamilton. It is not necessary to notice all of its boundaries, but is only material to notice the call establishing its east line, particularly with reference to the call for Piney Creek. After reaching a point for the inner southeast corner (Point T), there is a call "Thence South 840 vrs., cross Piney Creek 10 vrs. wide course E. cross and re-cross the same creek at 990 vrs. * * *" The 990 vara crossing is shown as D-1.

The next day, June 3, 1857, the same surveyor surveyed the M. L. Ware Survey. It was resurveyed by George Gibson September 10, 1859. The material calls here are for the east line and the north line. From its southeast corner the call is "Thence N. 920 vrs. cross Piney cutoff at 1158 vrs. a corner from a white oak 7″ in diameter marked X brs. S 63° W 1½ vrs distant, a Lynn 12″ diameter marked X brs N. 27 E 2 vrs Distant." The crossing at 990 varas is just above the letter A on the drawing at point K. The southeast corner calls for a stake from which a stump 4 inches in diameter marked X bears north 3 varas. Then there is the call from point B, or the northeast corner of the Ware to go west and cross the cutoff of Piney at 245 varas. Therefore, because of the bearing trees called for at the southeast and northeast corners the east line of the Ware became a marked line.

The Rust was surveyed June 10, 1958, by J. W. Hamilton. From its southeast corner, represented by the letter S, is the call "Thence north at 238 vrs. pass Castleberry S. W. corner at 2275 Piney Creek." The figure 175 represents the undisputed northeast corner of the Rust on Piney Creek. Then comes the call that gives rise to the controversy here. It reads: "Thence W. up said creek 519 varas to the E. line of the M. L. Ware pre-emption." Then is the call "thence S. with the same 809 varas to the S. E. corner of the same." That is the S. E. corner of the Ware represented by the letter R on the drawing. The problem is created when we apply the call "thence W. up said creek" because about 130 varas west of the northeast corner at the letter M Piney Creek forks. The south fork, or cutoff, runs just a little south of west from M. The north fork, or what appellants choose to call "Piney Creek," runs due north from M for about 450 varas. It then makes a sharp bend and runs nearly due west and continues for about 1000 varas where it crosses the east line of the Richard Gregory Survey.

It will thus be seen that if the north fork is followed, as appellants contend should be the case, the north line of the Rust will not reach the east line of the Ware. It would,

at point Y on the drawing, reach a projection of the east line of the Ware about 200 varas north of point B, which is the marked northeast corner of the Ware. That point would be about 475 varas north of where Piney cutoff crosses the east line of the Ware. Too, if the north fork is followed it would be about 1000 varas (not following the meanders) from 175 north to the bend, thence west through E to Y, the point where it would cross the projection of the east line of the Ware.

. The George Wilson was surveyed by George Gibson February 18, 1868 and resurveyed in February, 1871. He began at the southeast corner of the Gregory Survey and ran north with the Gregory east line. The first call called to cross Piney Creek at 150 varas. The point of crossing is as shown at point D-1. The seventh call is to run north with the east line of the Rust 309 varas to the Rust northeast corner. This would be to figure 175 of the drawing. The eighth call then reads "Thence west with Rust's N. B. 846 vrs. on M. L. Ware's E. B. line a stake for cor." The next call is "north with Ware's east boundary line 183 vrs., his N. E. corner of his preemption survey a stake from which a white oak 7" in diameter brs. S. 63° W 1⁵⁄₁₀ vrs. distant, a Lynn 12" in dia. brs N. 47° E. 2 vrs distant." The next call is to go west 245 varas where the cutoff of "Piney" is crossed.

. Appellants contend that the Rust north line meanders with what they call Piney Creek from point 175 through E to Y as shown on the drawing. They say Piney Creek was called for and since it is a natural object, it will control unless it is shown the surveyor was mistaken in his call and that there is no evidence that Mr. Hamilton, the surveyor, was mistaken when he called for the north line of the Rust to run west with Piney Creek. They say there was a difference between Piney Creek and cutoff of Piney Creek that was known to the surveyor and the trial court erred in refusing to find there was a difference and such was known to the surveyor, J. W. Hamilton.

Two surveyors, Roland Goodrich and Kenneth Nelson, who had made surveys on the ground of the material lines of the Gregory, Ware, Rust, Wilson and Goff Surveys, testified. We think it unnecessary to notice their testimony in detail but it will suffice to notice the effect of their testimony. Each of them made his survey in the late 1950's. Mr. Goodrich ran the east line of the Gregory, which is the west line of the Wilson, from point D-1 shown on the drawing to the northeast corner of the Gregory shown as point T. He also ran the lines of the Wilson from such corner following the field notes to the east, south and west back to point 175. He also surveyed along the north fork of Piney Creek from D-1 through Y, E and 175. Mr. Nelson ran the east line of the Rust Survey from point 174 to 175. This is also an inner west line of the Wilson Survey. He then surveyed from point 175 to M to 176 to A, along the cutoff or south fork of Piney Creek, which appellee contends is the dividing line between the Rust and Wilson Surveys. Then he surveyed the east line of the Ware Survey from A to B and the north line from B to C. He also surveyed the east line of the Evans Survey from C to D, which would be a part of the west line of the Wilson Survey, and then went from D to D-1 on the east line of the Gregory and west line of the Wilson.

The substance of Goodrich's testimony is that he found the east line of the Gregory as shown on the drawing and the line crossed Piney Creek or its north fork at the approximate point called for by the Hamilton field notes of June 2, 1857. He followed the field notes of the Wilson from the northeast corner of the Gregory and following the calls there given he reached point 175 which is the northeast corner of the Rust Survey. He then followed Piney Creek to point M where it forked and then followed the north fork through E and Y to D-1. Following the north fork he went north from point M. That fork does not reach the east line of the Ware but is 200 varas north of point B, the northernmost point of

the Ware. The north fork crosses the Gregory Survey east line at D–1.

The substance of Mr. Nelson's testimony is that following the south fork or cutoff on Piney Creek, the creek runs almost due west. It, of course, meanders, but runs a little south of west. The distance by straight line from 175 to A is 600 varas. By meandering the stream, the distance would be between 800 and 900 varas. At point A, B and C he found concrete markers. The one at point B was marked "Dial" on the line. From 176 to A, B and C the lines were marked with blazes on some trees. They had been marked with white paint. He did not find the original bearing trees on the Ware east line called for in the Wilson and Ware field notes. He found the east line of the Ware crossed the cutoff of Piney at about the point called for by J. W. Hamilton, when he surveyed it the day following his survey of the Gregory. The Ware was resurveyed by Gibson two years later in September, 1859.

The surveyors also show by their testimony that the two forks of Piney Creek were alike in their physical characteristics.

▮ We have reached the conclusion that the trial court correctly located the north line of the Rust Survey so as to follow the meanders of the cutoff of Piney Creek from the established northeast corner of the survey to the northwest corner on the east line of the Ware Survey where the creek crosses the east line as shown on the attached drawing shown as point K. Actually the court had before it the line only as far as point 176 but the necessary effect of the judgment is to fix the whole north line with the meanders of the creek to the point where it crosses the east line of the Ware at point K.

▮ It is true, as appellants assert, that a call for natural objects is a call to the highest dignity, but this does not mean that in all circumstances such a call is absolutely controlling. Such a call may be shown to be a mistake like any other call, and this may be shown circumstantially. The cardinal rule is that the footsteps of the surveyor shall, if possible, be followed. Stafford v. King, 30 Tex. 257; Koepsel v. Allen, 68 Tex. 446, 4 S.W. 856.

▮ As shown above by the field notes of the Ware Survey that is senior to the Rust, the east line of the Ware Survey has the status of a marked line because of the bearing trees. Goodson v. Fitzgerald, Tex. Civ.App., 135 S.W. 696, no writ hist. This line was run by J. W. Hamilton, the same surveyor who a year later surveyed the Rust. Presumably, and as indicated by the testimony of Goodrich and Nelson, who found the line, or certainly the portion from A to B, marked, he ran the line on the ground. Maddox v. Turner, 79 Tex. 279, 15 S.W. 237. The result is that when Hamilton called for the north line of the Rust to go "west up said creek to the E. line of M. L. Ware's preemption," he called for a known marked survey line. This call in the field notes was for objects of equal dignity, the marked line of an adjoining survey and a creek with two forks. Therefore, we find one of two conflicting locations is possible. Under such circumstances the call will be followed that is most consistent with the intention of the surveyor as reflected by the entire description. Davenport v. Bass, 137 Tex. 248, 153 S.W.2d 471; Davidson v. Killen, 68 Tex. 406, 4 S.W. 561. All of the surrounding facts and circumstances must be looked to in determining the intention of the surveyor. Blackwell v. Coleman County, 94 Tex. 216, 59 S.W. 530; Thomas Jordan, Inc. v. Skelly Oil Co., Tex.Civ.App., 296 S.W.2d 279, ref., n. r. e. Too, where some calls must be rejected, those will be rejected so as to result in the least conflict in the description. Wilson v. Giraud, 111 Tex. 253, 231 S.W. 1074. The calls should be harmonized in so far as possible. Ayers v. Harris, 64 Tex. 296. When they cannot be harmonized, effect should be given to those calls that will result in the least conflict. As few calls should be disregarded as possible. State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228.

When Mr. Hamilton was at point 175, the northeast corner of the Rust, he knew the north fork of Piney Creek crossed the east line of the Gregory Survey at D–1. He knew the location of the east line and north line of the Ware. He had run these lines and had given the east line of the Ware the status of a marked line. He knew where the cutoff of Piney crossed the east and north boundary lines of the Ware. He knew the north fork of Piney did not cross the marked east line of the Ware. When he called to go west with Piney, a creek with one name but two forks, it would seem reasonable to suppose he would think others would understand he meant the south fork because that was the course of such fork, while the course of the other fork from point M was almost due north. Particularly would he think there would be no question about his intending the south fork because it, and not the north fork, crossed the marked east line of the Ware where he called for the line to go. If the northwest corner of the Rust is placed about at point K where *the south fork of Piney* crosses the east line of the Ware, the west line of the Rust would not be excessively different from the called distance in the Ware field notes from corner R to the cutoff of Piney. Too, the west boundary of the Rust, when adjusted for the offsets on the south end, would coincide with the length of its east boundary line.

When we use Piney Creek from point 175 to M and the south fork of Piney from M to point K, where the south fork crosses the east line of the Ware, we give effect to all of the calls in the Rust field notes.

If, however, we use the north fork of Piney, as the north line of the Rust, we must reject the call for the marked east line of the Ware because that fork of Piney does not cross that line but would pass through point Y representing the terminus, 200 varas north, of a projection of such east line. Too, we would have to reject the call to go south with the east line because you reach that line only at a point 200 varas

south. Further, you would have to reject the distance call to the south because if Y is the northwest corner it is about 350 varas to the nearest point south where Piney cutoff crosses the east line of the Ware. Further, if you use the north fork of Piney, you must reject the call for distance because the surveyor called to go 519 varas. Such would place the northwest corner of the Rust just west of the sharp bend in that fork and some 500 varas east of point Y, if we use a straight line instead of meandering the stream. If you use the south fork, however, the distance by a straight line from 175 to A would be 600 varas instead of the 519 called for. Meandering the creek would be between 800 and 900 varas. Further, you would have to reject the call for course because from point M the north fork runs almost due north for about 450 varas and on making a sharp turn to the west runs almost due west to where it crosses the east line of the Gregory.

■  Also, in attempting to locate a line it is permissible to reverse the calls. Ayers v. Lancaster, 64 Tex. 305. If we do this and begin at point R, the field notes would read "Thence North with the east line of M. L. Ware's Preemption Survey 809 varas to Piney Creek; thence east down said creek 519 varas; thence South 2275 varas." When this is done, you go from R to K to 175 to S. Here it would be the cutoff of Piney that you reach at approximately 809 varas and not the north fork some 500 varas farther north. Here you would reject no call.

■  Appellants contend that Piney Creek cutoff was a navigable stream and survey lines could not cross it. In the first place, the court found the line to meander with the creek and did not call to cross it. In the second place, we do not think appellant established it to be navigable. In the third place, if it did cross it the patent was validated by Article 5414a, Vernon's Annotated Texas Civil Statutes; State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065.

Appellants complain of the refusal of the trial court to find that Hamilton knew the difference between Piney Creek and Piney cutoff. We think this was purely an evidentiary matter.

The judgment of the trial court is affirmed.