R. E. HUFF ET AL. v. J. H. CRAWFORD ET AL.

No. 372.—Decided February 14, 1896.

1. **Limitation—Absence.**

Huff v. Crawford, 88 Texas, 368, adhered to, as to statute of limitation to action for land against absentee. (P. 220.)

2. **Opinion—Incompetent.**

Testimony of a witness, to the effect that the muniments of title exhibited to him by a remote grantor of defendant constituted a valid chain of title to the land certificate under which the land was patented, was but the expression of the opinion of the witness, and was properly excluded. (P. 220.)

3. **Delivery of Deed Necessary to Give It Effect.**

A transfer was written upon the back of a land certificate, conveying it to Myrick, signed by two witnesses. In suit by parties holding under the heirs of Myrick, held, that to give effect to the conveyance there must be evidence of the delivery. Such evidence may be circumstantial. (P. 220.)

4. **Same.**

See evidence under which it was error to instruct the jury that the transfer upon the back of the cerificate passed title to it. The question of delivery should have been submitted to the jury, as there was testimony from which the jury could have found either way—i. e., that it had been delivered or had not. (Pp. 220, 221.)

**5.  Quit-Claim—Bona Fide Purchaser.**
A deed which purports only to release and transfer such interest as the grantor has in the land described therein does not convey the land itself and will not support the plea of innocent purchaser.  (P. 221.)

**6.  Conflicting Surveys.**
See opinion for discussion of evidence involving conflict of surveys.  (Pp. 221, 222.)

**7.  Charge—Dignity of Calls by Surveyors.**
Where the true location of a survey of land is involved and there are conflicting calls, the charge, in addition to stating the dignity of the different calls, should apply to the particular facts, and should add the qualification "that the true and correct location of the land is ascertained by the application of all or any of these rules to the particular case.  And when they lead to contrary results or confusion, that rule must be adopted which is most consistent with the intention of the parties apparent upon the face of the survey, read in the light of attending circumstances."  (Pp. 222, 223.)

ERROR to Court of Civil Appeals for Second District, in an appeal from Wichita County.

Suit for land.  Pleas not guilty and five years limitation; involving delivery of deed, conflict of calls of survey, etc.  Plaintiffs recovered in District Court; judgment affirmed on appeal; error at petition of defendants.

*Templeton & Patton* and *R. E. Huff,* for plaintiffs in error.—The execution, delivery and contents of a lost deed or the transfer of an unlocated certificate may be proven by circumstantial evidence, and in the case at bar the evidence, the rejection of which is here complained of, was admissible as a circumstance tending to show a transfer of the Thos. H. Garner certificate, either directly or by mense conveyances, to M. A. Cornelius, and the exclusion of such evidence was error.  Bounds v. Little, 75 Texas, 316; Crain v. Huntington, 81 Texas, 614; Ikard v. Thompson, 81 Texas, 285; Clapp v. Engledow, 82 Texas, 290; Capp v. Terry, 75 Texas, 401; Lindsay v. Jaffray, 55 Texas, 626.

The existence of a deed or transfer may be presumed from possession under claim of title corroborated by other circumstances.  Rule 17 of the Chapter on Evidence, of Sayles' Civil Statutes and authorities there cited.  Also see Ikard v. Thompson, 81 Texas, 292; Parker v. Spencer, 61 Texas, 155; Jackson v. Deslonde, 1 Posey, U. C., 674; Capp v. Terry, 75 Texas, 401; Gullett v. O'Connor, 54 Texas, 408; Lindsay v. Jaffray, 55 Texas, 626.

A delivery of said Thos. H. Garner certificate, with the transfer thereon endorsed by Thos. H. Garner to H. W. K. Myrick, was essential to make said transfer operative as a valid conveyance of said certificate to said Myrick, and the burden of proof was upon appellees to prove such delivery, and such burden will not be discharged by a presumption of delivery in the absence of proof that said certificate and transfer were ever in the possession of H. W. K. Myrick or of his heirs.  Hubbard v. Cox, 76 Texas, 239; McLaughlin v. McManigle, 63 Texas, 553; Van Hook v. Walton, 28 Texas, 59; Tuttle v. Turner, 28 Texas, 773; Steffian v. Bank, 69 Texas, 513.

The transfer in question was not admissible as an ancient instrument

in behalf of appellees, because it was not shown to have been delivered to the vendee therein, nor to any one claiming under and in privity with him, nor was it shown to have been at any time under the control of appellees nor of any one under whom they claim, nor was it shown to have ever been acted on by them in such way or manner as to render the same admissible in their behalf as an ancïent instrument. See statement made above. Chamberlain v. Showalter, 5 Texas, Civ. App., 226; Ammons v. Dwyer, 78 Texas, 639; Schunior v. Russell, 83 Texas, 95; Holmes v. Coryell, 58 Texas, 687; Hill v. Taylor, 77 Texas, 295; 1 Gr. on Ev., secs. 21, 144, 570; 1 Rice on Ev., 51, 52, 401 to 407.

Where, as in the case at bar, a defendant has removed permanently beyond the limits of the State, the running of the statute of limitations is not interrupted or suspended as to such non-resident during the time he so resides without the State, but article 3216 applies only where the defendant against whom it is invoked resides within the State but is temporarily absent therefrom. Rev. Stats. arts. 3203, 3216; Snoddy v. Cage, 5 Texas, 106; Love v. Doak, 5 Texas, 343; Moore v. Hendrick, 8 Texas, 253.

In establishing the boundary of a survey by its calls for course and distance, when there is a conflict between the calls for course and the calls for distance, the latter will prevail over the former, when it is apparent from the face of the grant read in the light of surrounding circumstances that the call for distance is more reliable and indicates more truly the intention of the parties to the grant. On deflection of course, see: Woods v. Robinson, 58 Texas, 655; Barnard v. Good, 44 Texas, 638. On reversing calls of a survey not made on the ground, see: Miles v. Sherwood, 84 Texas, 489. On descriptive and locative calls, see: Lilly v. Blum, 70 Texas, 704-710; Phillips v. Ayres, 45 Texas, 601; Duff v. Moore, 68 Texas, 270; Freeman v. Mahoney, 57 Texas, 626; Koenigheim v. Miles et al., 67 Texas, 113-120; Williams v. Winslow, 84 Texas, 376, 377; Bigham v. McDowell, 69 Texas, 100; Booth v. Strippleman, 26 Texas, 441; Stafford v. King, 30 Texas, 257; Fagan v. Stoner, 67 Texas, 286.

*A. H. Carrigan,* for defendants in error, cited and discussed: Thompson v. Hines, 59 Texas, 525; Herndon v. Davenport, 75 Texas, 462; Chamberlain v. Pybas, 81 Texas, 511; Hubbard v. Cox, 76 Texas, 242; Dikes v. Miller, 24 Texas, 417; McLaughlin v. McManigle, 63 Texas, 558; Brown v. Brown, 61 Texas, 56; Smith v. Sublett, 28 Texas, 171; Renick v. Dawson, 55 Texas, 108; Shifflet v. Morelle, 68 Texas, 391; Baker v. Swenson, 66 Texas, 411; Ross v. Mitchell, 28 Texas, 150; Harvey v. Cummings, 68 Texas, 605; Powell v. Thompson, 66 Texas, 231; House v. Brent, 69 Texas, 29; Sypert v. McCowan, 28 Texas, 640.

BROWN, Associate Justice.—Eva Crawford and her husband J. H. Crawford, E. A. Lester and her husband N. J. Lester, E. N. Runnels, H. N. Runnels, John Runnels, Frank Runnels and James Crawford (the last three being represented by their guardian W. B. Wilson), sued R. E.

Huff, C. F. Collins, S. Y. Collins, A. C. Kean, W. T. Coffield, W. H. Ballow, J. H. McDaniel and Morgan Jones, to recover the land in controversy. The date of filing the suit is October 13, 1890. It was dismissed as to Morgan Jones.

Huff and C. F. and S. Y. Collins impleaded as their warrantors A. B. Hardin, Sr., A. B. Hardin, Jr., Blanche Collins, William Collins and L. C. Stroud, who did not appear. A. C. Kean and W. T. Coffield impleaded their warrantor J. W. Kay.

Each of the defendants pleaded not guilty and limitation of three and five years; the three years limitation was abandoned on trial. Kean, Coffield and Ballow disclaimed as to all of the land sued for except 150 acres described by metes and bounds in their answer, and as to the 150 acres pleaded not guilty and limitation as above stated.

J. H. McDaniel, in addition to the pleas of not guilty and limitation, pleaded over against his co-defendants, asking to recover from them a given portion of the land, and for partition.

The facts material to the questions to be decided by this court are in substance as follows: On May 2, 1838, the Secretary of War of the Republic of Texas issued to Thos. H. Garner a certificate for 320 acres of land designated as a bounty warrant, which was duly approved in 1859 by the Commissioner of Claims. Upon this certificate was written a transfer of the entire certificate to H. W. K. Myrick, which authorized patent to issue to Myrick in his own name and was dated the 8th day of June, 1838, signed by Thos. H. Garner, witnessed by H. T. McGreen and Jno. T. Patterson. It was proved that the name Thos. H. Garner, signed to the transfer on the certificate, was in the handwriting of Thos. H. Garner.

In September, 1872, M. A. Cornelius had possession of the certificate, claimed to be the owner of it, with papers purporting to be a chain of title from Garner to himself, and delivered the certificate to W. F. Cummins to be located and surveyed for the said Cornelius. W. F. Cummins, in the month of September, '72, located the said certificate upon the land in controversy, had the same surveyed and returned the field notes to the general land office. The exact date of the return does not appear from the testimony. On the 5th day of February, 1884, the patent was issued in the name of Thos. H. Garner. In 1883 Cornelius conveyed the land to Cummins, who in the same year conveyed it to Huff and Collins.

H. W. K. Myrick and Mary Black were married in the year 1837. Myrick died in 1845 without issue, leaving his wife surviving him, who died in the year 1856, leaving, surviving her, her only child and heir, a daughter, —— Black, who died in the year 1888, having been previously married. The plaintiffs are the heirs at law of the daughter of Mrs. Myrick.

There is no direct evidence in the record to show whether or not the transfer from Garner was actually delivered to Myrick, and nothing to show the possession of the certificate by Myrick or his wife or her heirs at any time, or any claim made by them to the certificate or the land at a date prior to the institution of the suit.

Defendants Huff and C. F. Collins claimed the land under deed from persons admitted to be the heirs of Thos. H. Garner, which deeds were executed and recorded in the years 1887 and 1888, also under a chain of title from M. A. Cornelius. The S. P. R. R. survey No. 1 was located and surveyed on the 12th day of August, 1868, and the patent issued thereon in the year 1874. It was admitted that the defendants had title to this survey and that it was an office survey, no lines being run or corners marked upon the ground.

In the year 1854 eighteen surveys were made in the same section of country in the name of John A. Scott, being numbered one to eighteen. Beginning with number one, they each successively called for the preceding survey. The field notes of several of these surveys called for marked trees. At the southwest corner of number eight the marked corner is found as called for in the field notes, but no marked tree or other object natural or artificial called for in the field notes of the succeeding surveys is found until the northwest corner of number twelve is reached, which is identified by the marked trees called for. The southeast corner of number fifteen is also identified by the marked trees called for in the field notes. There are no marks found at the corners of sixteen or eighteen.

Plat No. 1 as given below shows the relative positions of these surveys as shown upon a sketch returned by the surveyor who made them and as they were platted on the map of the general land office at that time, and were so platted on said map at the time S. P. R. R. survey No. 1 was located. A sketch returned by the surveyor with the field notes of the S. P. R. R. survey No. 1 shows the position of the Scott surveys, the same as in plat No. 1 here given. Plat No. 2 given below shows the relative positions of the same Scott surveys on the map in the general land office in 1889, and as they are claimed to be located upon the ground by the witnesses.

Plat No. 3 shows the position of the S. P. R. R. survey No. 1 in relation to the other surveys as given in the sketch map returned with the field notes of that survey by the surveyor who made the survey, and as it would be in relation to the other surveys if it was located with reference to them as they then appeared on the map in the general land office.

Plat No. 4 shows the S. P. R. R. survey No. 1 as claimed by the defendants in its relation to the other surveys as they are upon the ground, and as its calls would place it if applied to the land as it is shown to be upon the ground.

It was proved on trial that to begin at No. 8 and locate the succeeding surveys by courses and distances as called for in the field notes would place them as shown upon plat No. 1, but to do this the calls for the marked corners of Nos. 12 and 15 must be disregarded. To locate them thus would place Nos. 15, 16, 17 and 18 about 1000 varas farther west than they are located according to plat No. 2, and as they are claimed to be actually surveyed upon the ground. It is also proved that to begin at the northwest corner of No. 12 and locate backwards to No. 9 would

place Nos. 11, 10 and 9 about 1000 varas farther east than they are actually located upon the ground, which would practically have the same effect as to the relative positions of the different surveys.

The statement of facts in this case is very voluminous, and we have thus condensed and given what we regard as the most material facts bearing upon the questions presented on this writ of error.

Upon trial had before a jury a verdict was rendered for the plaintiffs for all of the land in controversy, except 45 acres, which was found for R. E. Huff upon his plea of limitation. This judgment was affirmed by the Court of Civil Appeals, from which affirmance this writ of error is now taken.

Plaintiff in error assigns a number of grounds upon which it is sought to reverse the judgment of the District Court, some of which need not be noticed in this opinion, but we will state the following grounds as being necessary for us to discuss in view of the fact that in our opinion this judgment must be reversed and the cause remanded:

First. The defendants offered to prove by W. F. Cummins that N. A. Cornelius exhibited to him a complete chain of title for the Thos. H. Garner certificate, which was by the court excluded upon objection made by the plaintiff, which ruling is here complained of as error.

Second. That plaintiffs in error complain of the charge of the court wherein it in substance told the jury that the plaintiffs below had established their title to the land, because the charge assumed that the transfer of the certificate from Thos. H. Garner to H. W. K. Myrick had been delivered to Myrick.

Third. Kean, Coffield and Ballow claim to be innocent purchasers under their conveyance from Huff and Collins, which the court refused to submit to the jury.

Fourth. The defendants C. F. and S. Y. Collins complain that the court erred in holding that the statute of limitations was suspended by their absence from the State. Upon this question we think that the court ruled correctly, and the point has been heretofore decided by this court on certified questions in this case and we will not notice it further.

Fifth. The plaintiffs complain of the charges given by the court and charge asked by the defendants below and refused, as to the controlling effect of the calls in the different field notes in locating the land.

The proposed evidence of Cummins, to the effect that the muniments of title exhibited to him by M. A. Cornelius constituted a complete chain of title to the Garner certificate, was but the expression of the opinion of the witness and was properly excluded.

In order for the transfer from Garner to Myrick to pass title to the latter in the certificate, the transfer, and in this case the certificate, must have been delivered to Myrick. (Hubbard v. Cox, 76 Texas, 242.) Such delivery need not be proved by direct testimony, but could be established by circumstances, and the circumstances adduced in this case to establish the fact of delivery may be sufficient to have justified the jury in finding that the transfer and certificate were so delivered. The non-delivery of the certificate and transfer to Myrick might likewise be proved by circumstances, and in this case there were circumstances proved upon the trial tending to show that such delivery had never taken place. The fact that the certificate was found in the possession of Cornelius accompanied by a claim of ownership, the location and survey of the land for Cornelius, his claim of ownership and sale of the land after

location, the taking of possession by his vendees and the payment of taxes thereon, connected with the absence of any claim to the certificate or the land made by the heirs of Myrick for the time shown, were circumstances from which a jury might have found that the delivery of the certificate and transfer was never made, either actually or constructively, to Myrick. This testimony made an issue of fact which should have been submitted to the jury and it was error for the court to assume the existence of a fact thus controverted. (Ins. Co. v. Brown, 82 Texas, 635; Golden v. Patterson, 56 Texas, 628.) For this error the judgment must be reversed.

The deed from Huff and Collins to Kean, Coffield and Ballow purported only to release and transfer such interest and title as the grantors had in the land described by reason of the location thereon of other certificates, including the Garner. It did not convey the land itself and is therefore not such an instrument as will support the plea of innocent purchaser and the court properly so held.

From a careful examination of the statement of facts, we find that the following facts are practically undisputed: The S. P. R. R. survey was admitted to have been an office survey. The John Scott survey No. 9 occupied the same position on all the maps introduced in evidence, which showed its real position upon the ground as located and surveyed. The map and field notes in the general land office and in use by that department at the time that the S. P. R. R. survey No. 1 was located showed the Scott surveys to be located as shown in plat No. 1 as above. Those surveys as actually surveyed upon the ground exist and are recognized by the general land office and other public officers as shown in plat No. 2.

By reference to plats Nos. 1 and 2 it will be seen that the Scott survey No. 18 extended about half its width further west as shown upon the plat then in use, than as shown in plat No. 2, which exhibits its true position upon the ground. An extension of the west line of Scott No. 9 north to an intersection with No. 18 will bring it, at the point of intersection, to the southwest corner of No. 16 and the southeast corner of No. 18; that is, the west line of No. 9 and east line of No. 18 will thus be directly in line with each other in their location. Therefore, if the surveyor who located the S. P. R. R. survey No. 1 commenced at the southwest corner of 18 as it appeared upon the maps in the land office, running thence south 1900 varas, thence east 1900 varas, he would reach the west line of No. 9; thence north 1900 varas would reach the southeast corner of No. 18; thence, with the south line of 18, 1900 varas would close the survey, giving to the S. P. R. R. survey its full quantity of land without interfering with the John Scott No. 9, thereby complying with all of the calls in the field notes. An examination of plats Nos. 2 and 4 will show that to begin the S. P. R. R. survey No. 1 at the southwest corner of 18, as it really exists upon the ground, running thence 1900 varas south, and thence east 1900 varas, will place it in conflict with the Scott survey No. 9 to the extent of about 900 varas by 170 varas.

There is nothing in the evidence to show that the surveyor made any mistake in any of the calls made in the field notes of the S. P. R. R. survey No. 1. The fact that the data by which he made the location did not correctly represent the land as it was on the ground does not constitute a mistake in the surveyor who made the S. P. R. R. survey. He intended to locate the land where it was shown to be by the plat and data then in the land office, and this location had the effect to appropriate the land lying at the point where it would have been found if the data by which he was governed had been correct. (Boone v. Hunter, 62 Texas, 582; Railway v. Thompson, 65 Texas, 192; Keyser v. Meusback, 77 Texas, 68.) If the survey 18 of John Scott had been void and abandoned it would still govern because it would serve to show the place at which the S. P. R. R. was located. (Jones v. Burgett, 46 Texas, 284.)

The real issue in this case is: Where did the map and field notes, as they existed in the general land office at the time of the location of the S. P. R. R. survey, show the Scott survey No. 18 to be upon the ground. In other words, when the point upon the ground is ascertained where 18 would be located according to plat No. 1, then in order to locate the S. P. R. R. survey, it must be placed south of that point beginning at the southwest corner and appropriating the land according to its field notes lying south of No. 18 and west of the west line of No. 9. The real location of any of the Scott surveys except No. 9, which is not disputed, is unimportant in determining the question in this case, for as before stated, whether they be upon the ground as represented in plat No. 1 or not, that plat governs in determining the location of the S. P. R. R. survey, because it shows the intention of the surveyor and of the State to appropriate to that certificate the land lying at the point thus designated. There were no other data in the land office from which such a location could be made and there can be no room, under the facts as presented in this record, for a question to arise as to where the Scott surveys would be located by running from one direction or the other.

If the S. P. R. R. survey No. 1, being located as above indicated, includes the land in controversy, the defendants are entitled to hold it against the claim of the plaintiffs, because it is admitted to be the older survey of the two. If, however, thus located it does not include the land in controversy, the plaintiffs are entitled to recover under the Garner location if they show themselves entitled as owners under that certificate, there being no other facts or circumstances to defeat their claim.

We have thought it more profitable to state what we conceive to be the law applicable to the facts of this case than to criticise the charges given by the court and those asked by the defendant and refused. We do not think that either those given or those refused were applicable to the facts before the court. If upon another trial the evidence should show that the true location of any of the Scott or other surrounding surveys is material to the issue presented, then the court should not give a charge stating simply the law which defines the dignity of the different calls in a patent or other instrument, as, for instance, natural and artificial objects,

course and distance, as did the charge given in this case, for the reason that in case of conflict between such calls this would be a charge upon the weight of the evidence.    The charge upon this question should, in addition to stating the rule as laid down, also, in appropriate language to apply to the particular facts of the case, give the qualification of the rule "that the true and correct location of the land is ascertained by the application of all or any of these rules to the particular case, and when they lead to contrary results or confusion that rule must be adopted which is most consistent with the intention of the parties apparent upon the face of the patent read in the light of the surrounding facts and circumstances." (Stafford v. King, 30 Texas, 271.)

The judgments of the District Court and the Court of Civil Appeals are reversed and this cause is remanded to the District Court of Wichita County for further trial in accordance with this opinion.

*Reversed and remanded.*