STARK et al. v. STOUT et al. (No. 721.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 13, 1915. On Motion for Rehearing March 20, 1915. Second Motion for Rehearing and to Certify Denied April 3, 1915.)

1. BOUNDARIES ⬥3—COURSES AND DISTANCES—RELATIVE IMPORTANCE.

Where a survey called for a line running from a beginning point a certain distance in a certain course to the south bank of a river, the course controlled the distance, and the point where such course in fact touched the bank of the river, irrespective of the distance, was the true point located.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. ⬥3.]

2. BOUNDARIES ⬥37—LOCATION OF SURVEY—SUFFICIENCY OF EVIDENCE.

In an action between claimants to public lands previously surveyed and located, evidence held sufficient to show that defendants' surveys were located on the south bank of a river, although the distance, given to be run from the beginning point of the survey to such river was erroneous.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. ⬥37.]

3. BOUNDARIES ⬥37—LOCATION OF SURVEY—CHANGE IN POSITION OF LANDMARK—SUFFICIENCY OF EVIDENCE.

In an action between claimants to public lands previously surveyed and located, evidence held insufficient to warrant finding that the river on which the surveys, under which defendants claimed, were located had changed its course considerably since such surveys.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. ⬥37.]

4. BOUNDARIES ⬥3—CONFLICTING CALLS.

Where there are two identified marks or lines in a block of surveys neither can control the other to establish another point in the same survey when it is found that the calls are conflicting, but effect should be given to the one

most in harmony with the other calls of the field notes and with the lines of contiguous surveys.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. ⊛3.]

5. BOUNDARIES ⊛37 — LOCATION OF SURVEY—SUFFICIENCY OF EVIDENCE.

In an action between claimants to public lands previously surveyed and located, evidence *held* insufficient to show that plaintiff's survey crossed a certain creek.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. ⊛37.]

6. PUBLIC LANDS ⊛175—LANDS OF STATES—LOCATION—LANDS PREVIOUSLY LOCATED.

Lands previously located by defendants by surveys older than those under which plaintiffs claim cannot be recovered in trespass to try title.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 555–570; Dec. Dig. ⊛175.]

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Action by W. H. Stark and others against W. M. Stout and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Holland & Holland, of Orange, and Madden, Trulove & Kimbrough, of Amarillo, for appellants. R. E. Carswell and J. V. Patterson, both of Decatur, and J. M. Elliott and H. D. Spencer, both of Memphis, for appellees.

HUFF, C. J. Appellant W. H. Stark, as executor of the will of Alexander Gilmer, deceased, and A. G. Thomas and B. F. Hewson, executors of the will of Mrs. C. C. Gilmer, deceased, sued W. M. Stout, J. W. Duncan, J. E. Duncan, W. Duncan, J. W. Christopher, and S. B. Crump, which suit was originally filed August 25, 1911. The three Duncans disclaimed, and the case was tried as between the appellants and the other three defendants. The action is in the form of trespass to try title to recover three surveys of land, numbered 195, 197, and 199, block H of surveys located for Beatty, Seale & Forwood, in Hall county, Tex. Upon amendment of the petition, it was alleged the suit was one of boundary, involving a conflict between section 27, Adams, Beatty & Moulton survey, block A, which is alleged and claimed to cover survey No. 195, B., S. & F., block H, and the defendant Christopher claimed section No. 19, A., B. & M., block A, which is claimed covers survey No. 197, B. S. & F., block H, and the defendant Crump claimed survey No. 18, A., B. & M., block A, which he claimed covered survey No. 199, B., S. & F., block H. The defendants Stout, Christopher, and Crump answered separately by general denial and not guilty and the three, five, and ten year statutes of limitation, and also plead specially the boundaries of their respective sections, claiming the land included in the boundaries of their section, and asked for judgment therefor. The court rendered judgment for the defendants, appellees here, for the lands included in their boundaries as prayed for by them, from which appellants appeal. The court found that surveys 195, 197, and 199, claimed by plaintiff, should be located by course and distance calls of the original field notes from the southwest corner of survey No. 187, the same block as identified on the ground; that surveys 18, 19, and 27, A., B. & M., claimed by the defendants, conflict with said surveys and should be located as claimed by the appellees.

The question to be determined in this case is the true beginning corner of section 1, block 1, J. Pointevant survey, which surveys were made by George Spiller, January 4, 1875, and he located block A, A., B. & M., consisting of 36 sections of 640 acres each, on April 5, 1875. The only work he did on the ground that can relate to said surveys was to run a traverse line in 1873, while locating other surveys across the Prairie Dog Town fork of Red river, at or near the north end of section No. 1 of the Pointevant block, as now claimed by the appellees; from that point he meandered the north bank of the river to the 100th meridian, and then ran north on the meridian 5 miles to the five-mile post thereon, then turned west and ran a line west 40 miles, from which corner he located the northeast corner of survey No. 45, T. & P., and from which he located other surveys and marked the corner as the chinaberry corner, which is so known in this record. From the measurements theretofore made by him, he located the Pointevant block and the A., B. & M. block at the dates above specified and platted them and the field notes and the plats were returned to the land office May 22, 1875. Block H, B., S. & F., of which the sections claimed by appellant were a part, was located by R. C. Armstrong July 31, 1875, and their location is fixed by other connections than those of the Pointevant and A., B. & M. surveys; so it is uncontroverted that the appellees' surveys are senior in point of location. The field notes of survey No. 1, block No. 1, J. Pointevant, are as follows:

"Situated in Hall county, on the waters of Prairie Dog fork, a tributary of Red river, about 5 mi. 60° W. from the center of the county and known as survey No. 1 in block 1, beginning at a stake in the south bank of Prairie Dog town of main Red river (3) three miles W. and (4) four miles, 782 vrs. S. of a chinaberry stake, 2 high and 4 square, from which (2) two chinaberry trees br. S. 58½° E. 943 vrs. and S. 75° E. 1,246 vrs., which is the S. W. corner of survey No. 20, Blk. 18, for the H. & G. N. R. R.; thence E. 950 vrs. to stake with meanders of river; thence S. 3,800 vrs. to stake; thence W. 950 vrs. to stake; thence N. 3,840 vrs. to place of beginning."

Surveys Nos. 1 to 36, inclusive, call for and are connected with No. 1 and call for and are platted on the river calling for its meanders as their north boundary and Nos. 37 to 54, inclusive, call for and are connected with the same on the south by course and distance. Survey No. 1, block A, A., B. &

M., calls for 54, block 1, J. Pointevant, and all its surveys are located by course and distance from survey No. 1 of that block.

Survey No. 54, block 1, J. Pointevant, is described in the field notes as follows:

"Beginning at a stake 145 vrs. N. of N. W. corner of survey No. 53, also the S. E. corner of survey No. 1; thence W. 1,900 vrs. to stake; thence S. crossing Powell's fork 1,900 vrs. to stake; thence E. 1,900 vrs. to stake; thence N. crossing Powell's fork to place of beginning."

Survey No. 1, block A, A., B. & M., is described as:

"Beginning at a stake, the S. W. corner of survey No. 54, block No. 1 for A. B. Grant, by virtue of script 2/195, issued to J. Pointevant; thence S. 1,900 vrs. to stake; thence East 1,900 vrs. to stake; thence N. 1,900 vrs. to stake; thence W. 1,900 vrs. to place of beginning."

It is undisputed that the distance from a point three miles west of the chinaberry corner to the south bank of Red river, when the river was first observed after the surveys were platted in—that is in 1889—was 2,805 varas in excess of the distance called for in Spiller's field notes for the Pointevant survey No. 1. It is uncontroverted that Spiller did not measure the distance from the chinaberry corner to the point on the south bank of the river fixed as the beginning corner of the Pointevant block, but that he calculated the distance from his previous measurements theretofore made. It is also uncontroverted, and the court so finds, that if the Pointevant block is located by its calls for the river, the true location of appellees' surveys conflict with and practically cover appellants' surveys; but if the Pointevant block is located by distance from the chinaberry corner as called for by the field notes of Spiller, there is no conflict. The facts are uncontroverted that the river, when the location of the surveys was made, was, under the statute, a navigable stream more than 1,000 varas wide, and to locate the Pointevant blocks by the distance called for by Spiller will place surveys from 1 to 36 of Pointevant across the river with part of same on both sides of the river.

The controlling question in this case is, as we understand it, the true location of the northwest corner of survey No. 1, Pointevant block, and whether or not it should be located by the course and distance called for in the original field notes of Spiller and disregard the call for the river, or whether course and the river shall control in locating that corner and the distance called for south from the point three miles west of the chinaberry corner be disregarded. The court located and established the Pointevant No. 1 from the bank of the river as established in the year 1889, and ran out the rest of that block, together with block A, A., B. & M., by course and distance, locating the lands where the appellees claim it to be, thereby conflicting with the surveys of the appellant, which as above stated, are junior surveys.

[1, 2] In the call "three miles W. and 4 miles, 782 varas S. of a chinaberry stake, 2 high and 4 square, from which two chinaberry trees bear," etc., we think the distance called for south from the three-mile point was directory in its nature and should be so treated, and that its evident purpose was to point out or lead a person into the region or neighborhood of the tract surveyed, and hence not considered as entitled to controlling weight in locating the boundaries of section 1, block 1, J. Pointevant; especially so where it conflicts with the special locative calls. The locative call of the surveys in J. Pointevant block 1 is on the south bank of Red river, beginning at a point on the south bank of the river south of a point three miles west of the chinaberry stake. The north line of the tier of surveys in block 1, from 1 to 36 inclusive, call for the south bank of Red river with its meanders. In calling the distance to the south bank of the river, from a point three miles west of the chinaberry, the surveyor missed the distance nearly a mile and a half. It may well be inferred in calling for the distance the surveyor would not be very particular. He gave the course to travel from a given point, and when the south bank of the river was reached, where the south line intersected that bank there the survey was to begin, following the meanders of the river for the north line of the block, giving to each survey therein the course and distance called for. Generally distance is regarded as less reliable than course. Distance may be reported inaccurately, either by mistake or design. The surveyor may fall into error in making field notes. This is the work of the officers themselves; but when a surveyor says to the locator, "Go to a certain point, travel south to the south bank of the river, and there begin your survey," the locator has the right, we think, to go until his line reaches that point. If a surveyor says it is a certain distance to that point, he only intends to put him in that neighborhood at that distance. If the locator reaches that point before the distance called for gives out, he must stop. If the distance gives out before reaching it, he is entitled to proceed until he reaches it and when he does he must begin there. Stafford v. King, 30 Tex. 273, 274, 94 Am. Dec. 304. This, of course, cannot be followed as the rule in all cases, but we believe it is the rule which should govern this case. The Supreme Court held that if the place called for can be established, even though a stake is called for at the place, the call for distance should yield to it. Thatcher v. Mathews, 101 Tex. 122, 105 S. W. 317.

In this case the evidence shows that Spiller, the surveyor, did not survey the Pointevant block or block A, A., B. & M., on the ground, but made office surveys. He had previous thereto run a traverse line crossing the river near the point called for as the beginning point of the block, took the measurement of the river at that point, meandered

the north bank of the river down to the 100th meridian, thence north with the 100th meridian to the five-mile post and then turned west, running a west line for 40 miles and at the end of the line put in the china-stake corner. The distance from that point to the south bank of the river was calculated from the traverse lines theretofore run, and Spiller says he may have made a mistake in the calculation, but if it had been very great he would have discovered it in platting. The facts are clear that he did not at that time, or at any other, run the distance from the chinaberry corner to the south bank of the river. The south bank of the river was platted in by Spiller with the meanders of the north bank, and the lines of the surveys were platted in from the meanders of the river as thus ascertained. The northwest corner of the J. Pointevant block was determined by calculation. The course of the river was determined by his observation from his beginning corner for the meanders of the river. It is clear that Spiller observed the river, meandered its north bank, and that he platted the south bank by his meanders of the north bank. It was, as shown by him, his purpose when this work was done to put in block 1, S., P. R. R., and block 2, T. & P., which blocks some of the maps and the evidence in this case indicate were surveyed and platted, in between the 40-mile line west from the meridian and Red river. Block 2 shows to have been located west of the 40-mile line and to the river. It is certain that Spiller crossed Red river and knew where it was; that having located blocks 1 and 2, as above stated, the year before, north of the river, it was his purpose to locate the Pointevant block south of the river. He therefore called for the north line of that block to rest on the south bank. It is urged that he called for the river by mistake, for the reason that the three-mile point was more than 4 miles, 782 varas north of the south bank. We think the probabilities are that he made an erroneous calculation as to the distance from the china corner, rather than a mistake as to the river being situated at the point where he thought it was. It is quite certain he made a mistake somewhere, but one thing is absolutely certain from the field notes—he intended to locate the block on the south bank of the river. The true rule is that when calls lead to contrary results or confusion "that rule must be adopted which is most consistent with the intention of the parties apparent upon the face of the patent (field notes) read in the light of the surrounding facts and circumstances." Stafford v. King, 30 Tex. 271; Huff v. Crawford, 89 Tex. 214, 34 S. W. 607, 610; Blackwell v. Coleman County, 94 Tex. 216, 59 S. W. 530; Robinson v. Doss, 53 Tex. 508. We do not think it can consistently be asserted that the surveyor was ignorant of the location of Red river. He crossed it, meandered its north bank, and

measured its width near the point of the corner called for as the beginning corner, and further says that the northwest corner of survey 1, block 1, J. Pointevant, was a low, sandy valley with some sand dunes south of the river. This point he evidently intended for the beginning call. His constant assertion that the surveys fronted on the south bank should be held sufficient evidence that the surveys were located on the south bank. Of course, if the evidence showed that he mistook some other stream for Red river, or at that time Red river was in fact located north so as to place the south bank within 4 miles, 782 varas of the three-mile point, then the bank of the river as known, when resurveyed and located, would not control, but that it was the purpose to locate block 1 south of the river, fronting on the south bank, there can be no question, as evidenced by the field notes. The trial court found that the surveyor made a miscalculation in the distance from the three-mile point west of the china stake to the south bank, and not that he made a mistake as to the location of the river. We think there is ample evidence to support the finding.

The facts in this case do not bring the case within the rule announced in Allen v. Koepsel, 77 Tex. 507, 14 S. W. 151, where the surveyor mistook a slough or old channel for the river Gaudalupe; or the case of Land Company v. Thompson, 83 Tex. 169, 17 S. W. 920, where the surveyor mistook a canyon for Devil's river, and called for the latter in the field notes. Those cases hold simply that a mistake in a call for a river may be shown to be a mistake, such as may be shown in reference to any other call in boundary.

It is contended by appellant that the maps then in use show that the river was then supposed to be north of its actual location, and that the survey should be constructed according to the river as located on the then map, and that the presumption should be, as it was an office survey, that the surveyor intended to so locate the land. In rebuttal of this presumption Spiller made the map, and evidently his miscalculation caused the delineation of the river thereon which occasioned the miscall as to the distance; and further, he had actually seen the river, meandered and measured it, and testifies that survey 1 was south of the river in a sandy flat with some sand dunes. There is nothing in our judgment which shows that he was mistaken as to the location of the river on the ground or the location of the block on its south bank. The appellants in this case rely on the case of Huff v. Crawford, supra, contending that as the map in the land office then showed the situation of the river the Pointevant should be now so located. In this case the surveyor did not locate by the map, but located on the south bank of the river. He himself made the maps, he delineated the river, but in doing

so all the evidence showed he made a mistake in his call of distance for the river from the three-mile point, and also in platting the river on the map too far north. If he himself did not make the map he was the first surveyor in that country, and making his distance too short from the china corner for the river led to an erroneous map in designating the river. The Supreme Court said in the case above cited: "There is nothing in evidence to show that the surveyor made any mistake in any of the calls made in the field notes." In this case the trial court finds the surveyor made a mistake in the distance called for to the river. The evidence amply supports this finding. Spiller was on the river, knew it, meandered and measured it, identified and described the ground upon which section 1 is located south of the river. He calculated it could be reached in 4 miles, 782 varas. This the evidence shows was an error. As above stated, there is no room to doubt that the purpose was to put the Pointevant block south of the river, both by the field notes and Spiller's evidence.

[3] The appellants do not present by assignment of error that the court should have rendered judgment for them on the ground that the south bank of Red river was at the distance called for from the three-mile point when the field notes were made by Spiller, but they argue most strongly that it was, and that since the survey the river has changed its channel south so as to place the south bank where it was found in 1889, and where surveyor Parks located it and surveyed out the block. The appellants introduced a witness who described the north bank of the river, describing a flat, sandy country, with a low-lying sandy ridge for some distance back, giving the distance, and then described other sand dunes, cottonwood trees, etc. From this character of testimony appellants present the theory that somewhere through these sand dunes the channel of the river evidently ran when Spiller made his survey. This is a theory which may or may not be correct. Counsel for appellant asserts:

"The earth writes her own history to those who are able to read her landmarks. The course of the river at this point, the sand hill, sand flats, sand dunes, the sand bar, the cluster of cotton-wood trees, standing out just 1,-000 varas north from where the course and distance called for in Spiller's field notes would locate the south bank of the river (thus marking the former location of the north bank) that being the uniform width which Spiller assigned to the river, as appears without dispute, make a record of a shifting river bed, which it were stupid not to be able to read."

If the handwriting of earth is so legible that it were stupid not to be able to read, it occurs to us that to those of us who are not familiar with her chirography it would have been wisdom to have produced a witness who could have testified to the writing in court, showing the time it took and when it was the river in its bed flowed over this spot, and not leave us to surmise and speculate when

it was. Spiller does not testify the river was at that spot when he measured it, and no living witness so testified. The map introduced by appellants shows, if appellants' theory is correct, that the river for the entire distance of the block—15 miles—uniformly shifted south the exact distance at the point claimed by appellants in their theory. In 1889 Parks put in a corner on the south bank where vegetation ceased, and to further identify that corner set a monument back 200 varas from the river, which was standing at the trial. In 1903, by erosion of the south bank the original corner was destroyed and the river moved south 120 varas. This was 14 years after this corner was put in, and the Parks corner was put in about 14 years after the original field notes were made. Further than this evidence we find no change in the river bed. The block, as we understand, is now located and surveyed from the point 200 varas north of the monument set by Parks in 1889 to evidence the northwest corner of section 1. The witnesses who testified to the topography around this corner in some particulars described it as being in a low, sandy flat, with some sand dunes to the east of it, as does Spiller in his evidence. We do not think the evidence is sufficient to have warranted the court in finding that the river was where appellants' theory would place it when Spiller made the survey. They do not assign error on the part of the court in failing so to find, but present the theory in this court by argument.

[4-6] It is assigned as error on the part of the trial court in failing to locate section 54, block 1, J. Pointevant, so that its east and west lines will cross Powell creek. This section is the last section called for in block 1. Its lines on the east and west by the field notes call to cross the creek. It is undisputed that it was not actually surveyed on the ground. Spiller testified in 1873 he ran down this creek part of its length, just where and what part of it is not shown. He left the creek, crossed the river, and in 1874 meandered the north bank. It is not shown what distance he found the creek, where he placed the lines to cross it, was from the south bank of the river. So far as this record shows, its distance from the river where the lines of 54 should cross the creek is the merest conjecture on his part. That the calls for this creek were conjectured cannot very well be disputed. To have located this section so as to cross the creek would have placed it in conflict with section 1, block 1, and would be to disregard every other call for course and its situation as platted in the block. The trial court having fixed the northwest corner of section 1, as above shown, could not have placed section 54 as claimed by appellants without disregarding the other calls in the block, thereby destroying the contour and formation of the block. Where there are two identified marks or lines in

a block of surveys, one is entitled to no greater dignity than the other to establish another point in the same survey. When it is found in such instance the calls are conflicting, and cannot be harmonized, effect should be given to the one which is most in harmony with the other calls of the field notes and with the lines of contiguous surveys. Davidson v. Killen, 68 Tex. 406, 4 S. W. 561. We think in this instance the calls for Powell creek are merely descriptive calls, and that course and distance should prevail over the calls for the lines crossing the creek. The surrounding and connected circumstances adduced in proof show that course and distance is the most certain and reliable evidence of the true locality of section 54 from section 1 of the same block. We think the trial court was correct in so locating it. The court having so fixed and established sections 1 and 54, it is undisputed that the land of appellees is where they claim it and which they have fenced and occupied for more than 10 years before this suit was instituted. Their surveys being older than those claimed by appellants, it follows the land claimed by appellants was appropriated when their surveys were located, and they cannot recover in this cause.

It is contended by appellants that the court was in error in holding that Stout, Christopher, and Crump had title by the 10-year statute of limitation. From an examination of the record, we believe the court was correct in his findings that they had title, each of them, to their respective sections of land by the 10-year statute of limitation; however, our findings with reference to the boundary make it unnecessary to go into an examination and discussion of the facts with reference to the statute of limitation, and the assignments of appellants with reference to the 10-year statute of limitation will be overruled.

We think, under the facts and pleadings in this case, there was no error on the part of the court in refusing to tax the costs or any part of them against appellees.

The judgment will in all things be affirmed.

### On Motion for Rehearing.

In appellants' motion for rehearing, they assail our statement that the river was a navigable stream. The statement in the opinion is susceptible of the criticism offered by appellants. We really meant to say that the uncontroverted facts show that the surveys were made under the statute prescribing the manner of locating surveys upon navigable streams, the field notes and facts showing that the surveyor found the stream 1,000 varas wide, at least at one point. The field notes of each river survey call to front on the river one-half of its square, while the other surveys in the block call to be 1,900 varas square. Articles 5338 and 5339, Revised Civil Statutes, which has been the law since 1837, require surveys on streams so far as they retain an average width of 30 feet, which are defined to be navigable, to front one-half of the square on the stream, and that such stream shall not be crossed by the lines of any survey, while all other surveys shall be made in a square. We only called attention to this statute as evidence, not that the stream was actually proven to be navigable, but that the surveyor so treated it, that in his calls he fronted the river surveys one-half the square, while the other surveys were made in a square, and as evidence that it was not his intention to locate all the river surveys across the river, which would be the case if appellants' contention prevailed. Appellants insist that we are applying the rules where a survey is actually made upon the ground to an office survey. We are informed that we should follow the "pen" and not the "footsteps" of the surveyor in order to get his intention. We must admit that the appellants' lecture has been instructive, but really that is what we thought we had done in the opinion, and regret we have been unable to make ourselves understood. The same "pen" that wrote the call for distance also wrote that the survey must commence on the south bank where the line running south crossed the river. In following the same mark, we found it wrote that the north line of 26 surveys should be bounded by the south bank of the river. We also found that each survey fronted half the square on the south bank of the river and that all the other surveys south of this tier in the same block were made in a square. We may be in error, but we are convinced that the intention of the surveyor was to locate these blocks south of the river. Spiller, also, in his testimony, said survey No. 1 of J. Pointevant was located south of the river in a low, sandy flat, showing the point he intended to begin this block was south of the river. He had seen this point previously. That he crossed the river near this point is evidenced by the fact that he ran down Powell's fork and that he called that this block rest in part upon that stream. To our mind it is conclusive that the surveyor intended to locate the survey south of the river. The argument of appellant that he testified that he did not meander the south bank of the river may be ingenious, but we do not think sound in the light of Spiller's evidence to the effect that he meandered the north bank of Red river and platted in the south bank to conform to the north bank. The facts in this case do not bring it within the statement quoted by appellants from Sanborn v. Gunter, 84 Tex. 273, 17 S. W. 117:

"It will be as easy to say that all the land lying on the principal rivers in the state, if not the whole public domain, could have been as well taken up by going to their sources and establishing monuments there and then simply calling for surveys projecting from them."

The facts in this case do not establish any such conduct on the part of the surveyor

Spiller. He not only picked out the place where the block should begin, but he meandered the north bank of the river and thereby ascertained the south bank. He actually ascertained and knew the course of the river, if his testimony is worth anything. He did not conjecture its course as did Maddox in the Sanborn Case, but he ran its course on the north bank. The trouble in this case is not caused by an abrupt bend in the river, as in the Sanborn Case, after leaving the starting point, but the trouble in this case is his call from a given point south for the south bank of the river is too short for his beginning corner. Appellants would disregard every other call in the field notes indicating Spiller's intention and let one isolated call for distance control the whole location. It is so evident that this call for distance was occasioned by a miscalculation that it would be doing violence to every other known call, and in our opinion is absolutely against all the other evidence.

The appellants are very much distressed over losing their land and the great injustice done them. The record in this case is conclusive that the appellees in good faith have established and erected their homes on the land in dispute, and for years have improved and occupied it. One or the other must lose and it occurs to us from the facts in this case that the trial court has correctly located these lands, if not, certainly the equities are as strong in favor of appellees as they are in favor of appellants. The motion will be overruled.