KERR et al. v. STATE et al. (No. 6002.)

(Court of Civil Appeals of Texas. Austin. June 26, 1918.)

1. APPEAL AND ERROR ⟨Key⟩999(1)—WEIGHT OF EVIDENCE—WRITTEN INSTRUMENTS.

Where there is no contradiction in testimony in boundary dispute, and the verdict is simply deduction from facts proven, consisting of field notes and maps, the appellate court will not defer to the verdict of the jury.

2. TRIAL ⟨Key⟩240—ARGUMENTATIVE INSTRUCTIONS.

In a boundary dispute an instruction that surveyor is presumed to have surveyed on the ground all lines called for and ran to all of the artificial objects or lines called for in his field notes, and that original east lines of league of land were marked lines, an artificial boundary, held, under the facts, argumentative.

3. TRIAL ⟨Key⟩194(10)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In a boundary dispute an instruction that surveyor is presumed to have surveyed on the ground all lines called for and ran to all of the artificial objects or lines called for in his field notes, and that original east lines of leagues of land were marked lines, an artificial boundary, held, under the facts on the weight of the evidence, in effect calling for a peremptory instruction.

4. BOUNDARIES ⟨Key⟩3(1) — RELATIVE IMPORTANCE OF CONFLICTING EVIDENCE.

A call made upon conjecture will not control a call for course and distance.

5. BOUNDARIES ⟨Key⟩3(6) — RELATIVE IMPORTANCE OF CONFLICTING EVIDENCE.

The call for a marked line will ordinarily control the call for course and distance.

6. BOUNDARIES ⟨Key⟩37(1)—CONFLICTING SURVEYS—SUFFICIENCY OF EVIDENCE.

In a boundary dispute involving conflict between surveys under the 50 cent act and a resurvey of leagues of land set apart by state for building state capitol, in which jury found state was entitled to land as made vacant by the correction of the original survey of state land by resurvey, whereby eastern line of such survey was moved west, evidence held insufficient to sustain the verdict.

Appeal from District Court, Travis County; Ireland Graves, Judge.

Action between C. F. Kerr and others and the State of Texas and another. From a judgment for the latter, the former appeal. Reversed and remanded for new trial.

E. H. Yeiser, of Austin, and C. S. Williams, of Plainview, for appellants. B. F. Looney, Atty. Gen., and G. B. Smedley, of Austin, for the State. N. A. Rector, of Austin, for appellee T. F. Pinckney.

### Findings of Fact.

JENKINS, J. In 1880, in accordance with an act of the Legislature of Texas (Acts 16th Leg. c. 13) setting aside 3,000,000 acres of public land with which to defray the expense of building a state capitol, J. T. Munson surveyed said land in league surveys, and returned the field notes of same to the land office, together with maps thereof. In order to aid in fixing the location of the leagues shown on the sketch herewith, he ran a connecting line from what is known as the "sodhouse corner," north 18,330 vrs., and thence

the Thompson surveys were patented on such corrected field notes.

Chalk, for the purpose of ascertaining the distance between the eastern boundary of the leagues which were not abandoned and the N. W. corner of survey No. 19, ran from the sodhouse corner north, east, and north, and found and identified as a league corner what he calls the N. E. corner of No. 517 and the S. E. corner of No. 574, which callings would have been correct if there had been no error in numbering the capitol leagues, as shown on Munson's map of same. If the error in said map was as the parties hereto concede, the points at which Chalk arrived were in fact the N. E. corner of No. 580 and the S. E. corner of 573 as shown on accompanying sketch.

The following sketch will aid in understanding our findings of fact:

east 1,180 vrs., to what appears on his map as the N. E. corner of league 617. All parties hereto in their briefs treat this call as an error, in that it should have been for the N. E. corner of league 618, which is the N. W. corner of 17.

Some time prior to May 23, 1883, a large number of sections had been surveyed for Thompson Bros. under the "50 cent act." These surveys, which are in what is known as blocks T-1, T-2, and T-3, lie east of the capitol leagues, and, as originally surveyed, covered a number of such leagues.

It is evident from the record that prior to May 23, 1883, there was an agreement between the owners of the league surveys and the Thompsons, under which certain of the capitol leagues were to be abandoned, and the Thompson sections were to be resurveyed, so as to make their western lines coincide with the eastern lines of the capitol leagues not abandoned. Sam L. Chalk, on May 23, 1883, made corrected field notes of the Thompson surveys, evidently with the view of carrying this agreement into effect, and

The points "a" and "b" are the places on the ground to which Chalk actually arrived, whatever be the correct number of said leagues. From the point "b" Chalk ran north 5,050 vrs., and from thence in a S. E. direction, apparently following the meanders of Cat Fish creek, to a large stone on a knoll, which he called the N. W. corner of survey No. 19, a point well identified, but which in fact is the bearing for the N. W. corner of 19, and is 269 vrs. N., 45 E., or 190 vrs. east and 190 vrs. north of said corner. The total of Chalk's southings is 8,839 vrs., and of his eastings is 34,290 vrs., which is the same as if he had run south from the point "b" 5,050 vrs. to point Y, and thence east 34,290 vrs. to the point "c" on the foregoing sketch.

From this it is apparent that the land subject to the Thompson locations, if Chalk made no mistake as to his eastings, and the league lines were 5,000 vrs., as called for in their field notes, was 34,290 vrs., less the distance across the two leagues not abandoned, 10,000=24,290 vrs.

The corrected field notes of the Thompson surveys show that, beginning at the N. W. corner of No. 19, they extend west an aggregate distance of exactly 24,290 vrs. The western boundary of the Thompson surveys calls to reach and run to the eastern boundaries of leagues 576, 577, 610, and 615, which their distance would have reached, as above indicated, had there been no error in the Munson map of said leagues, but which in fact are leagues Nos. 575, 578, 609, and 616, as shown on the foregoing sketch.

It is the contention of the state and the appellee Pinckney, who claims, as a purchaser from the state, a part of the alleged vacancy, that the calls in the field notes of the most westerly of the Thompson survey, viz. sections 13, 14, and 15, in block T-3, and 10, 15, 50, and 51, in block T-2, and 4 in T-1, for the eastern lines of leagues 576, 577, 610, and 615, should be construed to be calls for the original eastern lines of 575, 578, 609, and 616, and that this is the controlling call in said field notes.

If this be conceded, as the north and south lines of the last-mentioned leagues were subsequently moved west 347 vrs., as shown by their corrected field notes and patents, a vacancy of that width was left between the western lines of the Thompson surveys and the eastern lines of the leagues. This is the theory upon which the state recovered in this suit.

The theory of the appellants is that the Thompson surveys must begin at the N. W. corner of No. 19, as called for in their field notes, and run from thence west an aggregate distance of 24,290 vrs. for their western boundary, and, as the point to which Chalk ran in order to get his eastings of 34,290 vrs. was 190 vrs. east of the N. W. corner of survey 19, this run would place the Thompson surveys 190 vrs. in conflict with the league surveys, if there was no excess in same. But inasmuch as the uncontradicted evidence shows that there was an excess of 156 vrs. in the lines of said leagues running east and west as originally surveyed, the conflict with said leagues is 190, plus 156, equals 246 vrs.; that the league surveys were corrected so as to move them off of this conflict, leaving the same not vacant, but belonging to the Thompson surveys as the same were patented.

The corrected field notes and the patents of leagues 575, 578, 609, and 616 show their north and south boundary lines to be 4,653 vrs., instead of 5,000, as called for in their original field notes. In other words, the eastern lines of said leagues were by their corrected field notes moved west 347 vrs.

## Opinion.

[1] It has been said that where there are two theories with reference to the location of a boundary, each of which finds some support in the evidence, and the jury adopts one of them and rejects the other, their verdict will not be disturbed on appeal. This is a convenient method whereby an appellate court may avoid the labor of investigating a voluminous and complicated statement of facts and the responsibility of making the proper deduction therefrom. It is true that jurors are the judges of the credibility of witnesses and the weight to be given to their testimony, and it is seldom that an appellate court is justified in disturbing their findings of fact. But when there is no contradiction in the testimony, as in the instant case, and the verdict of the jury is simply their deduction from the facts proven, which in boundary cases often consists of numerous field notes and maps, we are not impressed with the sacredness of such verdict.

In the statement of facts in the instant case there are 25 sets of field notes; 13 patents, introduced, not for the purpose of showing title, which was not in dispute, except as to boundary, but to show such boundary; 11 maps; and 8 file wrappers from the land office, with numerous indorsements thereon, besides the Chalk connecting run. It is no reflection upon the intelligence of the average jury to say that their deduction from the mass of testimony of this character is not necessarily entitled to much weight. Nor is it any assumption of superior ability to say that a court with such testimony before it, in writing, and ample time to examine the same, is in a better condition to make a proper deduction from such testimony than is a jury, especially as the members of appellate courts, both as practitioners at the bar and members of the court, must necessarily have had more or less experience in such cases, whereas the jurors have probably had no such previous experience.

Ordinarily, a trial court is not in position to render a jury any material assistance in a boundary suit without violating the rule that the charge must not be upon the weight of the evidence. Courts have laid down some general rules with reference to the comparative dignity of calls which, as general rules, are founded on reason. But in the very cases in which these rules have been announced the courts have said, and properly so, that these rules might have no application in a particular case, but that the circumstances may show that the call of the lowest order should control those of the highest order. We have stated our views with reference to these rules, the reasons upon which they are founded, and exceptions thereto, in other cases. State v. Sulflow, 60 Tex. Civ. App. 615, 128 S. W. 654; State v. Palacios, 150 S. W. 236; State v. Post, 169 S. W. 406.

The court submitted to the jury only one issue, viz.: Did Chalk, in making the resurvey of the Thompson surveys, place the west lines thereof at the original east lines of the

capitol leagues 575, 578, 609, and 616? The jury answered in the affirmative.

The court instructed the jury that, "in the absence of evidence to the contrary, it is presumed that Chalk, in making his resurvey, actually surveyed on the ground all of the lines called for, and ran to all of the artificial objects or lines called for in his field notes for said resurveys of said sections," and also instructed them that "the original east lines of capitol leagues 575, 578, 609, and 616 were marked lines, and were artificial objects."

[2, 3] Under the facts of this case, such charge was not only argumentative and upon the weight of the evidence, but was, in effect, a peremptory instruction to find for appellees. There is no assignment of error as to this charge, but it is here referred to as accounting for the verdict of the jury, which we do not think is sustained by the evidence.

We do not think it material, under the facts as disclosed by the record, whether Chalk actually ran the lines of the Thompson sections or whether the same were office surveys. If they were office surveys, he had ascertained by actual measurement from the point "b," up to and down Cat Fish creek, to the point "c," on the sketch shown in our statement of facts, that the distance from the east line of the capitol sections to the point "c" was, according to his measurement, 24,290 vrs. The space which his surveys called for aggregated this distance, which shows that he intended the distance to control, and that he called for the east lines of the leagues upon the supposition that such distance would reach said lines at point X on above sketch.

[4] On the other hand, if he actually ran out said surveys, we think his calls for the east lines of the surveys were made on the supposition that he had reached the same; but, in fact, he did not know where said lines were. A call made upon conjecture will not control a call for course and distance. Huff v. Crawford, 89 Tex. 214, 34 S. W. 606; Hamilton v. State, 152 S. W. 1117; Ry. Co. v. Thompson, 65 Tex. 192; Sellman v. Sellman, 73 S. W. 48.

[5] The call for a marked line will ordinarily control the call for course and distance; for the reason that, it being a visible object, the presumption is that the surveyor made no mistake when he said he ran to the same, though the distance called for may indicate the contrary. Courts have said, in some cases, that the call for an open prairie line may be given the same weight as a call for a marked line, upon the supposition that, inasmuch as such line could easily have been ascertained by running it out from a near-by known corner, it ought to be presumed that the surveyor, in calling for the same, had ascertained its true location.

[6] But in the instant case the league surveys are all located on a treeless plane. The surveyor who located them was required to mark two corners of each by 4 pits dug in the ground, 2 feet square and 1 foot deep. It is shown that such pits can now be found on the eastern boundary of the league, one at the S. E. corner of league 575 and the N. E. corner of 578, and the other at the S. E. corner of 609 and the N. E. corner of 615. If Chalk began at the N. W. corner of survey 19, and ran west 24,290 vrs., on account of the fact that the point "c" is 190 vrs. east of survey 19, and the excess in the two league lines lying east of the point "b" is 156 vrs., instead of being on the east boundary of said leagues, he was 346 vrs. west of the point X instead of at said point. If, as a careful surveyor, he instituted search for the east corners of the leagues, as they would not have been in the vicinity of where his measurement had led him to believe they were located, there is no such presumption, as a matter of law, that he found them as to give to his call for such line the same force as the call for a marked line, and the presumption of fact that he found said line is certainly not stronger than the presumption of fact that he actually ran the distance called for in his field notes.

After the Thompson resurveys were made, calling, as they did, for the eastern lines of the capitol leagues, the field notes of leagues 575, 578, 609, and 616 were corrected, for the reason, as appears on the wrappers of the files in the land office, that they were in conflict with the Thompson surveys. To remove such conflict, the eastern lines of these leagues were moved west 347 vrs., just the distance, plus 1 vara, that the 190 vrs. at the point "c" and the 156 vrs. excess in these leagues surveys indicate such conflict to have been. These league surveys were patented on these corrected field notes.

The facts in this case have not been fully developed. There is no dispute as to the location of the eastern lines of the leagues, either as originally located or as at present located. A survey of the Thompson sections would have disclosed, allowing them their distance west, where their western lines are located, and this would have settled the controversy in this suit.

In making the survey suggested, a question may arise as to whether it should begin at the N. W. corner of No. 19 or 190 vrs. east and 190 vrs. north of said corner. This may or may not be determined by the calls for natural or artificial objects, if any, in the Thompson field notes. None of the Thompson field notes, from 1 to 9, inclusive, were read in evidence, except No. 1; it being agreed that the other surveys were 1,900 vrs. square. No. 1 calls to run "west 1,800 vrs. cross McKenzie's trail at 1,900 vrs., buffalo head for corner, 31 vrs. north of McKenzie trail." Of course, the buffalo head cannot now be found. We do not know whether or not the McKenzie trail can be located. As

stated, we do not know what, if any, natural or artificial objects are called for in the field notes of the other Thompson surveys. If so, and they can be identified, they may control the calls for course and distance.

Assignments presenting other questions are overruled.

For the reason that the verdict of the jury is not supported by the evidence, judgment herein is reversed, and this cause is remanded for further trial.

Reversed and remanded.

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes